JUNIOR B. SETZER v. OLD REPUBLIC LIFE INSURANCE COMPANY.

(Filed 15 June 1962.)

1. **Fraud § 3; Reformation of Instruments § 2—**

Mistake of one party alone affords no ground for the relief of reformation unless such mistake is induced by the fraud of the other.

2. **Fraud § 3—**

In order for silence to be tantamount to a positive misrepresentation as the basis for fraud, such silence must relate to a material matter which the person remaining silent is under duty to disclose by reason of a relationship of trust and confidence existing between the parties, or because the party relying upon the want of disclosure does not have equal opportunity to ascertain the facts, which facts are within the knowledge of the party remaining silent, so that the silence amounts to an affirmation of a material fact upon which the other party has a reasonable right to rely.

3. **Fraud § 5—**

Where a party has reasonable opportunity to read the instrument in question, and the language of the instrument is clear, unambiguous and easily understood, his failure to read the instrument will bar him from thereafter asserting that he belived it contained provisions which in fact it does not, unless his failure to read the instrument is prevented by some trick or device or misrepresentation upon which he has a reasonable right to rely.

4. **Evidence § 3—**

It is a matter of common knowledge that insurance companies from time to time change the terms of their policies.

5. **Insurance § 7—**

Where an insurance company issues successive separate contracts of insurance, as distinguished from mere renewals of an original policy, insured does not have the right to assume that a new contract will conform to the terms of a prior policy of the same type.

6. **Same; Reformation of Instruments § 2— Allegations held insufficient to state cause of action for reformation for failure of insurance company to disclose limitation of coverage.**

Allegations to the effect that plaintiff procured successive loans from a loan company which also acted as agent for an insurance company, that in connection with the loans plaintiff made applications for and received successive life insurance policies which contained indemnity provisions for the loss of a hand or foot, that plaintiff, in connection with a later loan, made application for a policy on the same form as he had theretofore used when obtaining prior loans, that the loan company failed to disclose that insurer had changed its loan policies by deleting the indemnity provision, that plaintiff received the policy but did not read it until plaintiff lost his right arm in an accident occurrng some eight months thereafter, and that plaintiff, in the absence of notification to the contrary, assumed and relied on the assumption that the last policy also

contained the indemnity coverage, *are held* insufficient to state a cause of action to reform the policy to include the indemnity coverage.

APPEAL by plaintiff from *Froneberger, J.,* January 1962 Term of CATAWBA.

In this action plaintiff seeks to reform a policy of life insurance and to recover upon the reformed policy for the loss of an arm. Defendant demurred to the complaint.

The plaintiff alleges in substance the following facts:

During the two years prior to January 20, 1960, plaintiff had five times borrowed money from the Statesville Production Credit Association which was acting as the agent for defendant Insurance Company in soliciting insurance business for it. Whenever plaintiff obtained a loan from the Credit Association at its office, he filed an application for credit life insurance. In the application he stated the amount of insurance he wanted, agreed to pay the premiums, and authorized the Credit Association to renew and continue the insurance, in whole or in part, as long as his indebtedness to it was unpaid. Between January 16, 1958 and May 6, 1959, the plaintiff had applied for and received five such policies. Each policy, in addition to life insurance, had provided indemnity coverage for the loss of one or both eyes, hands, or feet. On January 20, 1960, plaintiff went to the office of the Credit Association and applied for a loan of $9,800.00. In doing so he filled out the usual application form for credit life insurance in the amount of the loan. The Credit Association made no mention that defendant's credit life insurance policy no longer provided indemnity for loss of either hand.

On January 27, 1960, for a premium of $98.00, the defendant Insurance Company issued to the plaintiff its policy No. 101858 which insured his life in the amount of $9,800.00 for one year under a creditor's group insurance policy issued to Statesville Production Credit Association. This policy contained no provision for indemnity for the loss of sight, a hand, or foot. About the last of January or the first of February, 1960 the policy was mailed to the plaintiff who did not read it. He opened the envelope and noted that it contained the policy which "to all appearances as to size, shape, color and the amount and position of printed matter" appeared to be just like the previous policies issued him. He assumed that because the application he had executed on January 20th was the same form he had used in making previous applications, and since the premium rate was the same, the insurance coverage was also the same.

On October 21, 1960 the plaintiff lost his right arm in a farm-tractor accident and thereafter discovered for the first time that indemnity

for loss of either hand had been omitted from his policy. Notwithstanding, however, he tendered to the defendant proof of loss, but defendant refused to pay. Plaintiff alleges that defendant knew the policy did not contain indemnity coverage for the loss of one or both eyes, hands, or feet but negligently and by its silence caused the plaintiff to believe that it did; that the provision was omitted through the mutual mistake of the plaintiff and defendant or through the mistake of the plaintiff and the fraud or inequitable conduct of the defendant. He prays that the policy be reformed to include indemnity in the amount of $9,800.00 for the loss of one or both eyes, hands, or feet through external, violent and accidental means as had been provided in previous policies.

Defendant demurred on the ground that the complaint alleged no facts constituting mutual mistake and no facts constituting fraud or other conduct on the part of the defendant which would entitle plaintiff to reformation. The trial judge sustained the demurrer and dismissed the action. The plaintiff appealed.

*Richard A. Williams and Martin C. Pannell for plaintiff appellant. Craighill, Rendleman and Clarkson and John R. Ingle for defendant appellee.*

Sharp, J. The appeal presents this question: Does the complaint allege a cause of action for reformation on the grounds of fraud? Mutual mistake is eliminated by Paragraph X of the complaint which is as follows: "X. That the defendant knew the policy to be issued pursuant to the plaintiff's application on or about January 20, 1960 would not provide indemnity coverage for loss of either hand."

The mistake of only one party to an instrument, if it is not induced by the fraud of the other, affords no ground for relief by reformation. *Smith v. Smith,* 249 N.C. 669, 107 S.E. 2d 530. "A mere misunderstanding of facts is not sufficient ground for asking reformation. Where the mistake has been on one side only, reformation will not be decreed. The mistake must have been common to both parties, * * *. *Britton v. Insurance Co.,* 165 N.C. 149, 80 S.E. 1072.

The plaintiff concedes in his brief that he bases his right to reformation on actionable fraud and that to withstand a demurrer he must allege facts which bring his case within the well-known rule laid down in *Kemp v. Funderburk,* 224 N.C. 353, 30 S.E. 2d 155; *Evans v. Davis,* 186 N.C. 41, 118 S.E. 845; and *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5.

Sometime prior to January 27, 1960 the defendant Insurance Company changed the coverage of its credit term-life insurance policy by

eliminating indemnity for loss of sight, hands and feet. The defendant's soliciting agent, who had written five other separate and distinct policies for plaintiff within two years made no representation that the policy still contained the indemnity coverage. It made no representation at all about it; it merely failed to tell plaintiff that the policy had been changed. Did this constitute fraud under the circumstances? We hold that it did not.

Where there is a duty to speak, fraud can be practiced by silence as well as by a positive misrepresentation. *Isler v. Brown*, 196 N.C. 685, 146 S.E. 803; *Brooks Equipment and Manufacturing Co. v. Taylor*, 230 N.C. 680, 55 S.E. 2d 311; *Brooks v. Ervin Construction Co.*, 253 N.C. 214, 116 S.E. 2d 454.

"Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances. * * * the silence must, under the conditions existing, amount to fraud, because it amounts to an affirmation that a state of things exists which does not, and the uninformed party is deprived to the same extent that he would have been by positive assertion." 23 Am. Jur., Fraud and Deceit, Section 77.

Under the circumstances of this case a duty to inform plaintiff of the change in the insurance contract would arise only if there were a relationship of trust and confidence between the plaintiff and the defendant. There was none. An insurance company is not a trustee for its insured. *Thames Realty Co. v. Mass. Fire and Marine Ins. Co.*, 184 N.Y.S. 2d 170. In *Thames Realty Company* the defendant's adjusters discovered that defendant's loss was greater than plaintiff knew and failed to tell him. The court held it had no obligation to inform plaintiff.

In *Metropolitan Life Insurance Co. v. James*, 238 Ala. 337, 191 So. 352, the beneficiary in a life insurance policy paid the initial premium while the insured was still alive but missing. The court held that there was no confidential relation between the plaintiff beneficiary and the insurance company which required plaintiff to disclose the fact that the insured was missing. The court said: "In dealings between persons standing in confidential relations or positions of trust, the law imposes an obligation on the part of one to safeguard the interest of the other with the same fidelity he safeguards his own, and charges him with knowledge of such duty. Withholding facts, material to be known is a breach of such legal duty, regardless of intent to deceive and is a legal fraud * * * In this case there were no confidential relations."

In *Stanbury, Inc. v. Massachusetts Bonding & Insurance Co.*, 90 F. Supp. 545, plaintiff alleged a custom and usage whereby bonding companies investigated the previous records of employees for whom indemnity bonds were sought; that plaintiff relied on this custom; that defendant failed to investigate the employee of plaintiff whom it bonded when an investigation would have revealed that he had a criminal record which would have caused plaintiff not to employ him. The theory of plaintiff's case was that by issuing the bond defendant had impliedly represented that it had investigated the employee and approved him as a good risk. *Medina, J.* said "Elementary principles of tort law require the dismissal of this claim. First of all, the defendant made no representation. Even had it known of the prior arrest, non-disclosure of that fact would be a misrepresentation only if defendant was under a duty to disclose such information. Defendant was under no such duty. By issuing the bond \* \* \* the only duty it assumed thereby was to indemnify plaintiff up to the amount of $10,-000.00 on certain contingencies. Defendant is not alleged to have had any knowledge that plaintiff would rely on the issuance of the bond as an assurance of (the employee's) Lamantia's reliability, nor is it alleged that defendant intended to induce plaintiff to rely upon any such representation." The complaint in the instant case also fails to make this allegation.

In this case, while the plaintiff alleges that defendant knew the indemnity provisions had been eliminated from the policy and by its silence caused plaintiff to believe it was included and "that the plaintiff did rely on the silence," there is no allegation that this particular coverage was one of the inducements to the plaintiff for taking the insurance. The factual situation raises an inference to the contrary. The insurance was an incident of the loan; plaintiff took the insurance because he wanted to borrow money from the Credit Association and the Credit Association required him to take the insurance if he got the loan. Had the omission in this policy been pointed out to the plaintiff, the complaint contains no suggestion that plaintiff would have declined to take the policy and would have sought a loan elsewhere.

Furthermore this complaint contains no allegation that the defendant had any fraudulent intent to induce plaintiff to rely upon its silence. "An essential element of a cause of action for the recovery of damages for false and fraudulent representations is that the representations alleged to be false and fraudulent were made with intent that the plaintiff shall act upon them. In the absence of an allegation that the representations were made by the defendant with intent that plaintiff shall act upon them, the complaint is subject to demurrer on the ground that the facts stated therein are not sufficient to constitute a cause of

action." *Bechtel v. Bohannon*, 198 N.C. 730, 153 S.E. 316; *Colt v. Kimball*, 190 N.C. 169, 129 S.E. 406.

Plaintiff's complaint discloses that his application was for $9,800.00 of term life insurance. That is what he got. The application did not include indemnity for loss of sight, hands or feet; the defendant's agent did not tell plaintiff that it did. No positive misrepresentation was alleged. The complaint also shows that plaintiff had the policy in question from the last of January or the first of February, 1960 until the date of his injury on October 21, 1960, a period of almost nine months, before he read it and discovered that it did not contain the indemnity provisions. From the date plaintiff received the policy he had the same opportunity as did the Insurance Company to know what it contained. No trick or device kept him from reading it; there was then no inequality of condition or knowledge. *Newbern v. Newbern*, 178 N.C. 3, 100 S.E. 77; *Graham v. Insurance Co.*, 176 N.C. 313, 97 S.E. 6.

This particular certificate was no cumbersome insurance policy, replete with fine print, exclusions, provisions, conditions, warranties, and stipulations. It is written in plain English and is reprinted in full on one page of the record on appeal. Including its heading, number, and signature, the policy contains only forty-three lines.

Courts which hold that the failure of an insured to read his fire insurance policy does not bar reformation have reasoned that "if an intelligent and prudent person reads his policy he will not understand much of what he reads." Anno., Reformation — Effect of Negligence, 81 A.L.R. 2d 7, 69; 29 Am. Jur., Insurance, Section 351. This argument could not apply here.

The North Carolina Court has frequently said that where no trick or device had prevented a person from reading the paper which he has signed or has accepted as the contract prepared by the other party, his failure to read when he had the opportunity to do so will bar his right to reformation. *Clements v. Insurance Co.*, 155 N.C. 57, 70 S.E. 1076; *Newbern v. Newbern, supra; Coppersmith v. Insurance Co.*, 222 N.C. 14, 21 S.E. 2d 838; *Griggs v. Griggs*, 213 N.C. 624, 197 S.E. 165.

In *Welch v. Insurance Co.*, 196 N.C. 546, 146 S.E. 216; defendant issued a policy of fire insurance on August 4, 1924. The property covered by the policy was destroyed November 15, 1924. At that time, the policy was void because insured had violated certain stipulations and covenants contained therein. Plaintiffs prayed for a reformation of the provisions affecting their right to recover. The court said: "All the evidence upon the trial of this action showed that plaintiffs accepted the policy as issued by defendant; that they were able to read, and had full opportunity to read the policy, which was in their pos-

session from the date of its issuance to the date of the fire. * * * Upon all the evidence, plaintiffs were not entitled to the equitable remedy of reformation of the policy."

*Gordon v. Fidelity and Casualty Co. of New York*, 238 S.C. 438, 120 S.E. 2d 509, involved a demurrer quite similar to the one under consideration here. Plaintiff, a career soldier, obtained from the defendant a liability insurance policy on a motor scooter. By the medical coverage in the policy, defendant agreed to pay all reasonable medical expenses incurred within one year from the date of an accident. As a result of an injury covered by the policy, plaintiff was hospitalized in a Government hospital. He incurred no expense because he was a soldier. He sued for the reasonable cost on his hospitalization alleging that defendant's agent knew at the time the policy was issued that he was a soldier and would incur no expense for hospitalization as required by the policy but remained silent, all of which constituted a fraud upon him. He alleged that the agent's silence related to a material matter known to the defendant but not known to him; that defendant had a legal duty to speak and its silence amounted to a representation known to be false and relied upon by the plaintiff as being true. The complaint showed that the plaintiff had the policy in question in his possession from January 22, 1958 until October 1st, 1958 before he discovered it did not contain the coverage he believed it to contain. Defendant's demurrer to the complaint was sustained. The court said:

"The respondent asserts that the silence of the agent of appellant, with respect to the medical benefits that he would be entitled to under the policy in question, constituted a fraud upon him. We have held that nondisclosure becomes fraudulent only when it is the duty of the party having knowledge of the facts to uncover them to the other. * * * An examination of the complaint fails to show any relation of trust and confidence between the respondent and the agent of appellant. * * * Here, the agent of appellant did nothing to prevent the respondent from reading the policy in question. We do not think that silence on the part of the agent of appellant, under the circumstances, amounted to a fraud.

"In the instant case, the respondent had the policy in question for more than eight months, with the opportunity to learn the contents and coverage provided for therein. Since he failed to avail himself of that opportunity, he is not entitled to damages for fraud and deceit on the basis that the representations of the soliciting agent are at variance with the coverage of the policy."

It should be pointed out that the policy involved in the instant case was not a renewal. It was an entirely new contract; it was life insurance in a different amount and for a different term from any the plaintiff had ever had before. It is a matter of common knowledge that insurance companies from time to time change the terms of their policies. One may not assume that a new insurance contract of any kind will conform to the terms of a prior policy of the same type. However, a different rule applies to renewals and the law does not impose the same degree of care upon an insured to examine a renewal policy as it does to examine an original policy. With reference to renewals, Appleman states the rule to be as follows: "Unless otherwise provided, the rights of the parties are controlled by the terms of the original contract, and the insured is entitled to assume, unless he has notice to the contrary, that the terms of the renewal policy are the same as those of the original contract. * * * On renewal of a fire policy, the insurer must call attention to any change in the terms, and if it does not, such change is no part of the contract." Appleman, Insurance Law and Practice, Section 7648; 29 Am. Jur., Insurance, Section 351. *Lumbermen's Insurance Co. v. Heiner*, 74 Ariz. 152; 245 Pac. 2d 415. *Quachita Parish Police Jury v. Northern Insurance Co. of New York*, 176 So. 639, (La. App., 1937); Anno., 76 A.L.R. 1223. "Where an insured person holds a policy of insurance which is about to expire, and which is satisfactory, and he orders a renewal of the policy, he is not negligent in failing to examine the new or renewal policy; he is entitled to assume that the terms of the new policy are the same as those of the expiring policy." Anno. 81 A.L.R. 2d p. 71. See also p. 108.

The complaint in this action alleges no facts which establish either mutual mistake or fraud. Furthermore, it discloses that plaintiff's right to reformation is barred by his own negligence. This latter disclosure supplies "extra weight" to the decision — as pointed out in an article by Professor Wex S. Malone, "The Reformation of Writings Under the Law of North Carolina," 15 N.C.L.R. 154, 174.

The judgment sustaining the demurrer is
Affirmed.