J. B. McCALLUM, JR., ADMINISTRATOR OF THE ESTATE OF MRS. MAY McCAL-
    LUM v. OLD REPUBLIC LIFE INSURANCE COMPANY.

(Filed 10 July 1964.)

**1. Appeal and Error § 60—**
    Decision on appeal becomes the law of the case and is controlling upon the second trial.

**2. Appeal and Error § 49—**
    In a trial by the court upon waiver of jury trial, the rules as to the admission and exclusion of evidence are not so strictly enforced.

**3. Reformation of Instruments § 6— Evidence held competent as tending to show mistake and absence of ratification or estoppel.**
    This action was instituted to reform a certificate of loan insurance in regard to the effective and expiration dates so as to make them effective for the period of one year from the date of the loan. Plaintiff introduced in evidence the group policy, which provided that insurance should become effective on the lives of all insured debtors effective concurrently with the inception of each debtor's indebtedness. Testimony by the borrower's agent who procured the loan and insurance that his principal did not see the certificate, did not know that the effective date as typewritten on the policy antedated the loan by some three days, that the agent did not know its date, that he did not consent to the date actually written in the certificate, and that he and his principal had borrowed money in previous years from the lender and that the effective dates of the certificates in the previous years coincided with the dates the indebtednesses were incurred, *held* competent as tending to show that the effective date written in the policy was contradictory to the previous understanding of the parties, was caused by mutual mistake or mistake superinduced by inequitable conduct, and that the agent's failure to examine the certificate and ascertain its date was not attributable to want of due diligence, and that there was no ratification or estoppel.

McCALLUM v. INSURANCE CO.

**4. Reformation of Instruments § 1—**

Whether a party seeking reformation will be denied relief on the ground that he was negligent in failing to read the instrument and discover the mistake at the time the instrument was executed depends on the facts and circumstances of each particular case, including whether the rights of innocent parties intervened and whether the reformation of the agreement will not prejudice the other party but merely require him to conform to the agreement actually made.

**5. Bills and Notes § 5.1—**

Approval of an application for a loan by the lender cannot create a debt on the part of the applicant before he receives the proceeds of the loan, notwithstanding the note is signed by the borrower and bears the date of the application rather than the date the loan is actually made, which date is set up on the books of the lender as the date of the loan and the date from which interest is charged.

**6. Appeal and Error § 49—**

Findings of fact of the court are conclusive on appeal when the findings are supported by competent evidence.

**7. Trial § 57—**

In a trial by the court under agreement of the parties, the court is required to find and state only the ultimate facts. G.S. 1-185.

**8. Trial § 56—**

Where different reasonable inferences can be drawn from the evidence in a trial by the court under agreement of the parties, the determination of which inference shall be drawn from the evidence is for the court.

**9. Insurance § 7—**

In this action to reform a certificate of insurance issued under a group policy on the lives of borrowers, evidence that the premium was paid for a twelve-month period, that the effective date of the certificate as typewritten thereon antedated the time the loan was actually made by three days, together with evidence of prior custom between the parties, etc., *is held* sufficient to overrule insurer's motion to nonsuit.

APPEAL by defendant from *McKinnon, J.,* September Civil Session 1963 of ROBESON.

Civil action to reform and enforce a certificate of insurance issued under a Creditor's Group Insurance Policy.

From a judgment that plaintiff recover from defendant upon the certificate of insurance, as reformed, the sum of $3,000 with interest thereon from 2 January 1960 until paid, together with the costs, defendant appeals.

*Henry & Henry and Vance B. Gavin for defendant appellant.*
*King & Cox by Jennings G. King for plaintiff appellee.*

Parker, J. This is the second appeal in this case. In the first trial of this case in the superior court of Robeson County, at the August Civil Term 1962, a judgment was entered sustaining a demurrer to the amended complaint. We reversed the judgment sustaining the demurrer. *McCallum v. Insurance Co.*, 259 N.C. 573, 131 S.E. 2d 435.

When the case was heard again in the superior court of Robeson County, plaintiff's amended complaint was the same amended complaint plaintiff had in the first trial. In the opinion on the first appeal, there is a full summary of the essential allegations of fact of the amended complaint. For an understanding of these essential allegations of fact in the amended complaint, reference should be had to our opinion on the first appeal. It would be supererogatory to repeat them in this opinion.

Defendant filed an answer to the amended complaint in which it alleged in substance as a bar to any recovery by plaintiff, that the certificate of insurance issued to plaintiff's intestate was identical in all respects with the insurance applied for, and was as intended by the parties; that there was no mutual mistake of the parties, and no fraud on its part coupled with mistake on the part of plaintiff's intestate, which would entitle plaintiff to the equity of reformation; that plaintiff's intestate accepted the certificate of insurance as applied for and issued; that she never notified defendant within a reasonable time or at any time that the certificate of insurance was not as intended, though she was able to read and had full opportunity to read it, and consequently ratified and accepted the certificate of insurance as delivered to her; and that plaintiff claiming through his intestate is estopped to challenge the plain language, intent and purpose of the certificate of insurance.

On the first appeal we were concerned only with pleadings. When the case was heard the second time, the parties, pursuant to G.S. 1-184 *et seq.*, waived a jury trial, and stipulated that Judge McKinnon should hear the evidence, find the facts, make conclusions of law, and render judgment accordingly.

## FINDINGS OF FACT

This is a summary of Judge McKinnon's essential findings of fact (the enumeration of paragraphs is ours):

1. Old Republic Credit Life Insurance Company on 15 September 1954 issued its group life policy #47-8803-1, whereby in consideration of the application for policies and the payment of premiums it insured the lives of certain debtors of Production Credit Association of Co-

lumbia, Columbia, South Carolina, now by Act of Congress merged with Federal Intermediate Credit Bank of Columbia. (The pleadings state the name of defendant as "Old Republic Life Insurance Company." We have before us a copy of the group policy # 47-8803-1 which was issued on 15 September 1954 by "Old Republic Credit Life Insurance Company." The parties entered into the following stipulation before Judge McKinnon: "The corporate name of the defendant was formerly the Old Republic Credit Life Insurance Company. It is now Old Republic Life Insurance Company, and the same corporation which was formerly known as the Old Republic Credit Life Insurance Company.") Lumberton Production Credit Association is an agency of Federal Intermediate Credit Bank of Columbia, and persons indebted to Lumberton Production Credit Association were eligible for credit insurance under the terms, provisions, and conditions of said group policy #47-8803-1, and, upon application therefor, as debtors to Lumberton Production Credit Association, were entitled to purchase credit life insurance and receive its certificate of insurance under said group policy.

2. Mrs. May McCallum, plaintiff's intestate, and her son, J. B. McCallum, Jr., the plaintiff, were familiar with the loan procedures of the Association by reason of prior dealings with it.

3. On 30 December 1958 plaintiff, individually, and his intestate acting through him requested the Lumberton Production Credit Association to make them a loan in the sum of $3,000 payable on 1 October 1959, which was secured, in part, by a crop lien and chattel mortgage upon property owned by each of them, and, in part, by a certificate of insurance upon the life of plaintiff's intestate in the sum of $3,000 to be issued by defendant to the Association under the Creditor's Group Insurance Policy. The employees of the Association typed and delivered to plaintiff an insurance application form dated 30 December 1958, and a note and crop lien and chattel mortgage bearing a similar date.

4. The typewritten application, note, crop lien and chattel mortgage were delivered to plaintiff on 30 December 1958 in the office of the Association in the town of Lumberton, so that he might carry them to the town of Maxton to be executed and delivered by his intestate at a later date. On the same day plaintiff carried these written instruments to the home of his intestate in the town of Maxton and left them there to be executed by her.

5. All these written instruments were executed by Mrs. May McCallum, his intestate, in the town of Maxton, and were duly witnessed

by and acknowledged before a notary public. Mrs. May McCallum was then 83 years of age. She had suffered two strokes and had been confined to her bed for about two years. She continued to be so confined until her death on 2 January 1960. Ordinarily she could read and write, but due to her physical condition she could not see well enough to read and was physically unable to write from 30 December 1958 to the date of her death.

6. Sometime in the afternoon or evening of 31 December 1958, plaintiff went by his mother's house and picked up the papers which he had left there the previous day for her to execute. Her signature appeared to have been signed to the papers by means of her mark. He placed the note, crop lien, chattel mortgage, and application for insurance in an envelope addressed to the Lumberton Production Credit Association at Lumberton and mailed the envelope in Maxton on the afternoon or early evening of 31 December 1958.

7. Under the mail schedule in force on 31 December 1958, a letter addressed to Lumberton and mailed in the Maxton Post Office on the afternoon or evening of that day could have been sent to Lumberton on a Star Route which picked up the mail about 6 o'clock the next morning, or it could have been placed on the mail train which was scheduled to leave Maxton for Lumberton at 9:30 o'clock the next morning. There was no other mail schedule to Lumberton.

8. 1 January 1959 was a legal holiday which was observed by the Lumberton Post Office as a legal holiday and also by the Lumberton Production Credit Association as a legal holiday. The Lumberton Production Credit Association did not open for business on that day.

9. The loan application, the note, the crop lien and chattel mortgage, and the application for insurance were not received in the office of the Lumberton Production Credit Association prior to 2 January 1959. The application of plaintiff and his intestate for a loan of $3,000 was approved by the Association's executive committee, and entries of that approval were made on 31 December 1958, prior to the return to the Association of the executed note, crop lien, chattel mortgage, loan application, and application for insurance.

10. The group creditor's life insurance policy issued to the Federal Intermediate Credit Bank of Columbia, under which certificates were issued to both plaintiff's intestate and plaintiff, specifically provided that: "Insurance shall become effective on the lives of all insured debtors of the creditor under the terms and conditions hereinafter provided, effective concurrently with the inception of each such debtor's indebt-

edness, and shall continue until the expiration date stated in the certificate evidencing the insurance issued under this policy to *each* such debtor." (The italicized word "each" by inadvertence is omitted from the findings of fact in the record, but it does appear in the copy of group policy #47-8803-1, which was sent forward with the record.)

11. The Manual of Insurance (instructions) issued to the Lumberton Production Credit Association, pursuant to which the certificate was issued, provided:

"SECTION 8 — EFFECTIVE DATE OF INSURANCE

"(a)    The effective date of the insurance will be the date of the approval of the loan; and the premiums shall be calculated from date of approval. The first disbursement may be the insurance premium."

12. On 3 January 1959 the Lumberton Production Credit Association issued to plaintiff its check for the net proceeds of the loan, and the loan was then set up on the books of the Association. No entry with reference to the loan had been made on the books of the Association prior to 3 January 1959, and interest did not accrue upon the loan until 3 January 1959, even though the note was dated 30 December 1958.

13. On 3 January 1959 defendant executed and delivered to Mrs. May McCallum, plaintiff's intestate, under the terms of its creditor's group insurance policy, Certificate PLD No. 520,909, a copy of which marked Exhibit A is attached to the amended complaint; and the Lumberton Production Credit Association thereupon deducted from the proceeds of the loan and remitted to defendant the sum of $150, which represented the premium thereon for one full year. The certificate insured the life of Mrs. May McCallum for a period of one year in the sum of $3,000, payable to the Association as its interest might appear, and provided that the remainder of the insurance, if any, in the event of her death, should be paid to her estate, or in lieu thereof and at the option of the defendant, to any relative by blood or connection by marriage or to any other person equitably entitled thereto by reason of having incurred expenses occasioned by her maintenance or her illness or her burial.

14. The loan applied for by J. B. McCallum, Jr., and Mrs. May McCallum was approved on December 31, 1958, and thereafter Certificate No. 520,908 was issued to:

Debtor:
J. B. McCallum, Jr.

> Age:
> 57
> Effective Date:
> 12/31/58
> Amount:
> $3,000.00
> Expiration Date:
> 12/31/59
> Premium:
> $45.00
> Creditor:
> Lumberton Production Credit Association
> Months:
> 12

Certificate PLD No. 520,909 was issued to:

> Debtor:
> Mrs. May McCallum
> Age:
> 83
> Effective Date:
> 12/31/58
> Amount:
> $3,000.00
> Premium:
> $150.00
> Expiration Date:
> 12/31/59
> Creditor:
> Lumberton Production Credit Association
> Months:
> 12 Mo.

The words — with the exception of the names of the insured — were a part of the printed form of each certificate. The figures in each certificate were inserted therein by the use of a typewriter.

15. The certificates of creditor insurance, together with a check for the net proceeds of the loan, were mailed to and received by plaintiff for himself and his mother, and were retained by them without any question or objection until sometime after the death of Mrs. May McCallum. This check was duly cashed and the proceeds were used for the purposes for which the loan was made.

16. At the time the certificate of insurance was issued to Mrs. May McCallum, the Association's employees followed a procedure under which the insurance certificate was not written until the date upon which the loan was actually made; but when the loan was made, the insurance certificate was then typed and completed, and the date upon which the loan application had been approved was inserted as the effective date. This procedure was followed in the issuance of Certificate PLD No. 520,909. Neither Mrs. McCallum nor plaintiff had knowledge or notice at any time of the instructions given by the defendant to the Association.

17. The loan of $3,000 to plaintiff and his intestate was repaid as follows: $1,500 on 24 September 1959, $1,500 on 29 October 1959, and interest of $139.70 on 4 December 1959. The stock of the borrower in the Association was sold 11 December 1959. The crop lien and chattel mortgage were cancelled of record 18 December 1959. No question was raised and no complaint made that the entire transaction was not as agreed upon and the insurance was not issued as agreed and was not in all respects in conformity with the application therefor, or that premium had been paid for any other or different term than that contracted for, or that any agreement of the parties was not complied with, until after the death of Mrs. May McCallum. Plaintiff has never made any contention that the certificate of credit insurance issued to him was not in all respects in accordance with the agreement of the parties. Plaintiff at all times in making the application for the loan, receiving and applying the proceeds thereof, and repaying the loan, was, as it related to his intestate, the duly constituted and acting agent of his intestate, because she had authorized him to conduct the business, secure the loan, use the proceeds, and ratified his acts and conduct, and is bound thereby. Plaintiff, both individually and as agent of his intestate, was experienced and capable of transacting the business with the Association and defendant, and of understanding the meaning and effect of the language used in consummating the agreement. Plaintiff in conducting this business for his mother represented that his mother was capable, competent, qualified, and responsible to enter upon and carry out business transactions.

18. Lumberton Production Credit Association had been advised by the Federal Intermediate Credit Bank that, upon approval of application for loan by the executive committee, in the absence of bad faith on the part of the borrower, it was "a binding contract" to make a loan.

19. A rider attached to and made a part of group policy #47-8803-1 provided that where the records of the creditor disclosed that a debtor, whose application for a loan was approved by the creditor, had requested life insurance protection and through error or omission the company was not notified, that the debtor would "nevertheless be protected to the same extent as if proper notice had been given and an insurance certificate had been issued."

20. On 3 January 1959 the Lumberton Production Credit Association mailed to plaintiff an envelope postmarked 2:30 p.m., which contained Certificate PLD No. 520,909, a check dated 3 January 1959 for $2,638.25, representing the net proceeds of the loan, and a statement showing the disbursement of the loan proceeds. At the time plaintiff received the envelope, he examined the statement and took out the check, but did not read the certificate of insurance. The statement attached to the check showed the following:

"Amount of Advance                                        $3,000.00
    Deductions:
        Loan Service Fee                     $ 21.75
        Class A Stock                         145.00
        Group Life Insurance,
            Mrs. May McCallum                 150.00
        Group Life Insurance,
            J. B. McCallum, Jr.                45.00
    Total Deductions                                         361.75
            Amount of Check                               $2,638.25"

21. The inception of Mrs. McCallum's indebtedness was 3 January 1959, the day the executed loan application, note, chattel mortgage, and application for insurance were received by and acted upon by the Association, and no indebtedness existed before that date.

22. The employees of the Association acted pursuant to the Manual of Insurance issued by the defendant in dating the certificate of insurance "December 31, 1958," and in providing an expiration date of "December 31, 1959"; but this was contrary to the intentions of the

parties and to the terms of the group insurance policy of the defendant, and was a mistake on the part of the employees of the Association, the agent of the defendant.

23. Plaintiff left the certificate of insurance in an envelope in a drawer of his desk at his home. His intestate did not read the certificate of insurance at any time during her life and could not have read it if she had attempted to do so.

24. After Mrs. May McCallum's death on 2 January 1960, plaintiff got out her certificate of insurance and found for the first time that its effective date was given as 31 December 1958. He then made demand upon defendant for payment of the certificate of insurance, which demand for payment defendant refused.

## CONCLUSIONS OF LAW

"FIRST: On January 3, 1959, Mrs. May McCallum paid to the defendant the sum of $150 in full payment of the premium upon the certificate of insurance then issued to her for a period of one full year; and the defendant — having received and retained the premium — was legally obligated to furnish to her a full year's insurance coverage.

"SECOND: The date of the inception of the indebtedness of Mrs. May McCallum and J. B. McCallum, Jr., to the Lumberton Production Credit Association was January 3, 1959, when the loan was made, when the relationship of debtor and creditor was first established, when interest upon the loan began to accrue, and when the transaction was first set up upon the books of the Association.

"THIRD: Under the express provisions of the master policy issued by the defendant, the insurance upon the life of Mrs. Mc-Callum did not become effective until the date of the inception of her indebtedness, which was January 3, 1959; and the defendant was under a legal duty to furnish her insurance coverage for a period of one full year thereafter.

"FOURTH: The certificate of insurance was not issued until January 3, 1959; Mrs. McCallum's application for insurance was not received by the Lumberton Production Credit Association prior to January 2, 1959; there was no mutual agreement between the parties that the effective date of the certificate should be December 31, 1958; and the defendant could not have incurred any legal liability under the certificate prior to the receipt of her application for insurance on January 2, 1959.

"FIFTH: Neither Mrs. May McCallum nor J. B. McCallum, Jr., had any notice or knowledge of the practice followed by the Lumberton Production Credit Association, under the direction of the defendant, of inserting the date upon which the loan was approved as the effective date of the certificate of insurance; and — in the absence of such notice or knowledge — neither of them was bound by the action of the Association in inserting December 31st, 1958, as the effective date of the insurance certificate.

"SIXTH: The defendant's unauthorized action in dating the effective date of the certificate back to December 31st, 1958 — without the knowledge or consent of the insured — deprived Mrs. May McCallum of the full year's coverage for which she had paid and to which she was entitled, and thereby produced an inequitable result; and such action constituted inequitable conduct upon the part of the defendant, entitling the plaintiff to reformation of the certificate.

"SEVENTH: Neither Mrs. May McCallum nor J. B. McCallum, Jr., her Agent, was negligent in assuming that the certificate of insurance would be issued in accordance with the previous custom and practice of the parties.

"EIGHTH: Neither Mrs. May McCallum nor J. B. McCallum, Jr., her Agent, was guilty of negligence in failing to read the certificate to ascertain whether it bore an effective date prior to the time that the loan was made and the certificate was issued, so as to bar their right to recover.

"NINTH: The plaintiff is entitled to have the certificate reformed by inserting January 3, 1959, as the effective date, and by inserting January 3, 1960, as the expiration date of the certificate."

Based upon his findings of fact and conclusions of law, Judge McKinnon ordered and adjudged as follows:

"FIRST: That Certificate PLD No. 520,909, issued by the defendant to the Lumberton Production Credit Association on January 3rd, 1959, upon the life of Mrs. May McCallum be reformed by striking therefrom the figures: '12/31/58', which appear after the effective date, and the figures: '12/31/59', which appear after the expiration date, and by inserting in place thereof the figures: '1/3/59' and the figures: '1/3/60,' so that the certificate will read: 'Effective date 1/3/59 — expiration date 1/3/60.'

"SECOND: That the plaintiff have and recover of the defendant upon said certificate, as reformed, the sum of $3,000, with

interest thereon from January 2, 1960, until paid, together with the costs of this action, to be taxed by the Clerk."

Defendant assigns as error that Judge McKinnon, over its objections, permitted plaintiff to testify in substance as follows: Mrs. May McCallum, his mother, never saw the certificate of insurance issued to her and did not know it had been dated 31 December 1958. He acting in behalf of his mother did not know that 31 December 1958 had been written in the certificate of insurance issued to her as the effective date thereof; and he acting for her never consented that 31 December 1958 should be written in the certificate of insurance as the effective date thereof. He and his mother borrowed money from Lumberton Production Credit Association in 1954, 1955, and 1956, and that the effective dates of the certificates of insurance issued during those years were the same dates the checks were issued.

Plaintiff in his amended complaint alleges in substance: All the parties intended that the certificate of insurance issued to his mother should be issued and dated at the time the loan was actually made, and should be for a term of 12 months. That the certificate of insurance issued to her, as written, did not truly and correctly embody the agreement between Mrs. May McCallum and defendant. That the figures "12/31/58" and the figures "12/31/59" were inserted in the certificate of insurance issued to his mother here by mutual mistake on the part of the parties, or that defendant inserted such figures with intent to defraud his intestate by dating the policy back to a time when it could not have been in force and effect.

In our former decision in this case, which is the law of the case, *Hodges v. Hodges*, 257 N.C. 774, 127 S.E. 2d 567, the Court said:

"The Court said in *Insurance Co. v. Lambeth*, 250 N.C. 1, 15, 108 S.E. 2d 36, 45, quoting from *Williams v. Insurance Co.*, 209 N.C. 765, 769, 185 S.E. 21, 23, and citing additional authorities in support of the quotation from that case: ' "It is well settled that in equity a written instrument, including insurance policies, can be reformed by parol evidence, for mutual mistake, inadvertence, or the mistake of one superinduced by the fraud of the other or inequitable conduct of the other." *Williams v. Insurance Co.*, 209 N.C. 765, 769, 185 S.E. 21; 29 Am. Jur., Insurance § 241; 44 C.J.S., Insurance §§ 278, 279; 7 Appleman, Insurance Law and Practice, § 4256.' To the same effect, 76 C.J.S., Reformation of Instruments, § 30; 45 Am. Jur., Reformation of Instruments, § 62.

"In 76 C.J.S., Reformation of Instruments, § 29, b, (1), pp. 371-2, it is said: 'Fraud or inequitable conduct, to warrant relief by

way of reformation, has been held to consist in doing acts, or omitting to do acts, which the court finds to be unconscionable, as * * * in drafting, or having drafted, an instrument contrary to the previous understanding of the parties and permitting the other party to sign it without informing him thereof * * *.' "

It is well-settled law that when the parties waive a jury trial, the rules of evidence as to the admission and exclusion of evidence are not so strictly enforced as in a jury trial. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668. Regardless of that rule of law, considering that the group policy #47-8803-1, under which the certificate of insurance here was issued to plaintiff's intestate, contained this language, "Insurance shall become effective on the lives of all insured debtors of the creditor under the terms and conditions hereinafter provided, effective concurrently with the inception of each such debtor's indebtedness, and shall continue until the expiration date stated in the certificate evidencing the insurance issued under this policy to each such debtor"; that the inception of Mrs. May McCallum's indebtedness to the Association was 3 January 1959, when the Association issued its check and interest began to accrue on the loan; and the other attendant facts and circumstances, we are of opinion that the challenged evidence was competent and material for two purposes: One. As tending to show that the writing into the certificate of insurance issued to Mrs. May McCallum here of the effective date "12/31/58" and of the expiration date "12/31/59," instead of the effective date 1/3/59 and of the expiration date 1/3/60, was contrary to the previous understanding of the parties, and was caused by mutual mistake or was caused by the mistake of plaintiff and his mother superinduced by inequitable conduct of the Association and defendant. Two. As tending to show that when the Association and defendant inserted the effective date of the certificate of insurance issued to Mrs. May McCallum here antedating the certificate of insurance before the inception of her indebtedness to the Association, contrary to the previous understanding of the parties and without informing Mrs. May McCallum and plaintiff, her agent, thereof, and contrary to what it had done on loans made to them in 1954, 1955, and 1956, plaintiff's failure as agent of his mother to examine the certificate of insurance issued to his mother here when he received it and to see the effective and expiration dates is not traceable to that want of diligence which may fairly be expected from a reasonable and prudent man, and that there was no ratification or waiver or estoppel by plaintiff, as his mother's agent, or unreasonable delay by him as her agent in applying for redress after notice of the mistake, so as to bar a recovery by him in this action, particularly as such evidence tends to

show that no rights of innocent third parties are involved, and defendent will not be prejudiced by reformation of the effective date and the expiration date of the certificate of insurance issued to Mrs. May McCallum so as to conform to the agreement and intention of the parties, because it will merely be required to pay what it contracted to pay, and for which insurance it has been paid a premium of $150. It is manifest from the findings of fact that Mrs. May McCallum, due to her physical condition, was unable to read the certificate of insurance issued to her here. In the former opinion in this case it is said:

"We have held in *Bank of Union v. Redwine,* 171 N.C. 559, 88 S.E. 878, and in *Finishing and Warehouse Co. v. Ozment, supra* [132 N.C. 839, 44 S.E. 681], that a person's failure to read an instrument before signing it does not necessarily or always prevent reformation. To the same effect see 45 Am. Jur., Reformation of Instruments, § 79; 29 Am. Jur., Insurance, p. 712; Anno. 81 A.L.R. 2d, pp 16-18; 76 C.J.S., Reformation of Instruments, pp. 399-400; Malone, 'The Reformation of Writings under the Law of North Carolina,' 15 N.C.L.R. 155, 174-6. On page 176 Malone, after reviewing a number of our decisions, states: 'Certainly the rule that failure to read is a positive bar to recovery cannot be accepted at its face value.' "

See also: Couch on Insurance, 2d Ed., Vol. 1, § 8:2, Dating Policy, quoted in *McCallum v. Insurance Co., supra;* 45 Am. Jur., Reformation of Instruments, § 75; 29 Am. Jur., Insurance, § 351; 76 C.J.S., Reformation of Instruments, §§ 31, 32, and 46.

Whether or not a party seeking reformation will be denied relief on the ground that he was negligent depends on the facts and circumstances of the particular case. *Setzer v. Old Republic Life Insurance Co.,* 257 N.C. 396, 126 S.E. 2d 135, heavily relied on by defendant, was a case in which this Court affirmed a judgment below sustaining a demurrer to the complaint, and is factually distinguishable from the instant case. *Coppersmith v. Insurance Co.,* 222 N.C. 14, 21 S.E. 2d 838, and other cases cited in defendant's brief, and relied upon by it, are also factually distinguishable from the instant case.

Defendant assigns as error this finding of fact: "The inception of Mrs. May McCallum's indebtedness was on January 3, 1959, the day the executed loan application, note and chattel mortgage, and application for insurance were received by and acted upon by the Association; and no indebtedness existed before that date." This assignment of error is overruled.

This finding of fact is supported by the following competent evidence: Plaintiff testified to the effect that the check for $2,638.25 received by him from the Association was dated 3 January 1959. Mrs. Betty Ivey, a witness for plaintiff and an employee of the Association, testified on direct examination: "The Association only charged interest on the loan from the date the money was actually advanced, not from the date of the note but from the date the man received it." She testified on cross-examination: "We only charged interest for the time he actually had the loan." Merelle Harris, a witness for plaintiff and secretary-treasurer of the Association, testified: "A loan is set up on the books of the Association as a loan the date that it is closed, not when the application is approved." There can be no indebtedness without a debt. Surely, no one can seriously contend that the mere approval of an application for a loan by a lender creates an indebtedness on the part of the applicant before he receives one dollar of the loan applied for. This challenged finding of fact is supported by competent evidence and is conclusive on appeal. *Bizzell v. Bizzell, supra.*

We have examined all defendant's assignments of error to Judge McKinnon's essential findings of fact and find that all his essential findings of fact are supported by competent evidence, and consequently conclusive on appeal. In a trial by the court under agreement of the parties, the court is required to find and state only the ultimate facts. G.S. 1-185; *St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885. When a trial by jury is waived, and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the court. *Hodges v. Hodges, supra.* Judge McKinnon's essential findings of fact are not contradictory, as contended by defendant. All defendant's assignments of error to the findings of fact are overruled.

Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of plaintiff's evidence; defendant offered no evidence.

In the former appeal in this case, this Court held that the amended complaint stated a cause of action to reform the certificate of insurance issued to Mrs. May McCallum in regard to the period of coverage. In the hearing before Judge McKinnon, plaintiff introduced evidence tending to support the allegations of fact in his amended complaint, which considered in the light most favorable to him was sufficient to support a favorable finding for him on any issues raised by the pleadings. Consequently, Judge McKinnon properly overruled defendant's motion for judgment of compulsory nonsuit. *Goldsboro v. R. R.,* 246 N.C. 101, 97 S.E. 2d 486.

Defendant assigns as error Judge McKinnon's conclusions of law second, fourth, fifth, sixth, seventh, and eighth, and this part of the third, "which was January 3, 1959," and the last word in this conclusion, "thereafter." All these assignments of error are overruled.

Judge McKinnon's essential findings of fact are abundantly supported by competent legal evidence, and his findings of fact support his conclusions of law, which are correct on the facts and circumstances found by him to exist in the instant case, according to the law stated in the opinion on the former appeal and the opinion in this case, and they in turn support his judgment. No error of law appears upon the face of the record proper.

All defendant's assignments of error, whether discussed above or not, have been carefully examined, and all are overruled. The judgment below is

Affirmed.