**FLI–BACK COMPANY, INC., et al.,**
Appellants,

v.

**PHILADELPHIA MANUFACTURERS MUTUAL INSURANCE COMPANY** and Affiliated FM Insurance Company, Appellees.

No. 73–1636.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1974.

Decided Aug. 1, 1974.

Arch K. Schoch, Sr., High Point, N.C. (Schoch, Schoch, Schoch & Schoch, High Point, N.C. on brief), for appellants.

William L. Stocks, Greensboro, N.C. (Welch Jordan and Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N.C., on brief), for appellees.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

The Fli-Back companies, toy manufacturers in High Point, North Carolina, allege that they were surprised and dismayed when the defendants, two affiliated insurance companies, refused to pay a claim for business interruption loss caused by a fire in Fli-Back's West Building. Fli-Back sued for the loss, mustering various theories designed to provide coverage when the policy's terms fail, but the district judge granted defendants' motion for summary judgment. On Fli-Back's appeal we reverse.

Fli-Back first negotiated for fire insurance coverage with Philadelphia Manufacturers Mutual (PMM) in 1955. PMM notified Fli-Back that it could provide lot-cost mutual coverage for all of the manufacturing complex except the West Building, which fell short of PMM's construction standards. For the West Building, PMM offered to secure coverage from an affiliated insurance company, Affiliated FM.[1] PMM and Affiliated FM issued their first policies for fire and extended coverage in 1957. In 1960 Fli-Back purchased business interruption insurance from PMM. PMM did not tell Fli-Back that the policy excluded the West Building and did not offer to secure business interruption coverage for the West Building from Affiliated FM, despite the fact that Affiliated FM was in the business of writing such coverage. An affidavit supplied by a former Fli-Back vice president who was in charge of insurance in 1960, indicates he did not read the policies. Instead he relied on conversations with PMM representatives, and on letters from PMM to the effect that "your interests are protected" and that the policy covered "Business Interruption loss of your plant" (defendants' exhibits 27 and 29). Another vice president, who took charge of insurance in 1965, made an affidavit saying that he read the policies but did not realize they failed to cover business interruption losses caused by damage to the West Building.

The policies were renewed in 1963 and 1966. Throughout this period representatives of PMM were in frequent contact with Fli-Back, making recommendations about insurance coverage, reporting the results of safety inspections, and recommending fire-prevention measures. In these matters PMM representatives acted on behalf of Affiliated FM as well as their own company. PMM collected the premiums for both companies, and PMM's inspectors surveyed the West Building along with the rest of the complex.

On May 7, 1969, the West Building was destroyed by fire. Affiliated FM

---

1. The parties stipulated that PMM is one of four mutual insurance companies that own the stock of Affiliated FM. Stipulation No.

10. The extent of its ownership is not revealed.

paid Fli-Back's claim for property damage, but PMM refused its claim for business interruption loss. Fli-Back filed suit on the policy in state court on April 29, 1970. PMM invoked its diversity of citizenship and removed the suit to the district court. Fli-Back then amended its complaint to state a claim against PMM for breaching an agreement to provide business interruption coverage for the entire plant. It also joined Affiliated FM as a defendant, on the theory that PMM was acting as Affiliated FM's agent. In granting defendants' motion for summary judgment, the district court reasoned that the policy did not cover the West Building and that any claim not based on the policy was barred by North Carolina's three-year statute of limitations, N.C. Gen.Stat. § 1–52.

On appeal Fli-Back presses four arguments: (1) that business interruption coverage must be construed more broadly than regular accident insurance, because its purpose is to protect an entire business from an accident in any part; (2) that PMM's conduct estops it to deny coverage; (3) that the insurance policy should be reformed on the ground of mutual mistake or mistake induced by the deceit of PMM; and (4) that the claim against PMM for breach of an agreement to provide full business interruption coverage is not barred by the statute of limitations.

On the first point we agree with the district court that the coverage clause is unambiguous.[2] The precedents plaintiff cites[3] are therefore inapposite.

■■ On Fli-Back's second point we are bound by decisions of the North Carolina courts holding that the doctrine of estoppel cannot be used to extend coverage beyond the terms of an insurance policy. Hunter v. Jefferson Standard Life Ins. Co., 241 N.C. 593, 86 S.E.2d 78 (1955); McCabe v. Maryland Casualty Co., 209 N.C. 577, 183 S.E. 743 (1936); Currie v. Occidental Life Ins. Co., 17 N.C.App. 458, 194 S.E.2d 642 (1973). Although we would prefer the rule of Harr v. Allstate Ins. Co., 54 N.J. 287, 255 A.2d 208 (1969); Pitts v. New York Life Ins. Co., 247 S.C. 545, 148 S.E.2d 369 (1966); and Preferred Risk Mutual Ins. Co. v. Thomas, 372 F.2d 227 (4th Cir. 1967) (applying South Carolina law), we find no indication that the North Carolina Supreme Court is disposed to abandon the rule followed in most jurisdictions in favor of the liberal rule followed in fewer than a dozen states. See Annot., 1 A.L.R.3d 1139, §§ 3–5.

On Fli-Back's other two contentions —reformation and breach of agreement to provide coverage—we find material questions of fact that make summary judgment inappropriate.

■ North Carolina's law on agreements to procure insurance coverage was summarized in Wiles v. Mullinax, 270 N.C. 661, 155 S.E.2d 246 (1967), describing the holding on the first appeal in that case, 267 N.C. 392, 148 S.E.2d 229 (1966):

> [W]e . . . held that, where an insurance agent or broker undertakes to procure a policy of insurance for another, it is his duty to use reasonable

2. The coverage clause appears on a separate schedule attached to the standard printed policy. It is a separate paragraph, typed in elite-size type, and it reads as follows:

> This Policy covers only the actual loss sustained by the Insured due to interruption of business as a result of physical damage caused directly by the perils insured against hereunder to the property utilized by the Insured, situate on premises within the area bounded by West Green Street, a line parallel and coinciding with the southerly walls of East Wing and 1950 Addition, a line parallel with and 10

feet east of the easterly wall of the West Building, and a line parallel with and 30 feet north of the north wall of North Building, in HIGH POINT, Guilford County, NORTH CAROLINA.

The boundary description is identical to that in the PMM fire policy, which both parties understood to exclude the West Building.

3. Lewis Food Co. v. Fireman's Fund Ins. Co., 207 Cal.App.2d 515, 24 Cal.Rptr. 557 (1962); Studley Box & Lumber Co. v. National Fire Ins. Co., 85 N.H. 96, 154 A. 337 (1931); Nusbaum v. Hartford Fire Ins. Co., 285 Pa. 332, 132 A. 177 (1926).

diligence to obtain it and, within the amount of the proposed policy, he may be held liable for a loss sustained by the proposed insured due to his negligent failure to do so. We further stated that if, in spite of reasonable diligence, such agent or broker is unable to procure the desired insurance coverage, it is his duty to so notify the proposed insured in order that the latter may take the necessary steps to protect himself otherwise.

270 N.C. at 665, 155 S.E.2d at 249. The relationship between an insurance agent and his client is both contractual and fiduciary; it is unaffected by the fact that the insurance agent represents both insurer and insured; and failure to provide the requested coverage may support an action either for breach of contract or for negligence. Bank of French Broad, Inc. v. Bryan, 240 N.C. 610, 83 S.E.2d 485 (1954); Elam v. Smithdeal Realty & Ins. Co., 182 N.C. 599, 109 S.E. 632 (1921); Musgrave v. Mutual Savings & Loan Ass'n, 8 N.C.App. 385, 174 S.E.2d 820 (1970). Proof that the agent misrepresented the scope of coverage may also support an action for damages. Elam v. Smithdeal Realty & Ins. Co., *supra*. The insured's failure to read his policy to see if it fulfills the agreement is not, as a matter of law, a bar to his suit against the agent. In a suit for negligence, failure to read the policy may constitute contributory negligence that will bar recovery altogether, and in a suit on the contract, it may reduce recovery to nominal damages under the doctrine of avoidable consequences. But either case requires a factual determination that failure to read the policy was negligent under the circumstances. Elam v. Smithdeal Realty & Ins. Co., *supra*.

Under these principles, Fli-Back's theory is that PMM was an agent for Affiliated FM, and that it agreed to provide business interruption insurance for Fli-Back's entire plant. Because of the past course of dealing between the parties, Fli-Back contends it was entitled to assume that PMM would either insure the West Building along with the rest or obtain insurance through Affiliated FM. PMM neither obtained coverage for the West Building nor notified Fli-Back that it had not, and it is therefore prima facie liable as an agent for breach of its contractual duties.

The exhibits in the record amply support Fli-Back's contention that PMM was an agent for Affiliated FM. Defendants have supplied no proof, either by exhibits or affidavits, that PMM did not agree to provide full business interruption coverage or that it told Fli-Back the West Building was not covered. Instead, defendants rely on their contention that Fli-Back's cause of action is barred by the statute of limitations, N.C.Gen.Stat. § 1–52(1), (5). This was the theory on which the district court granted summary judgment, holding that the agreement was breached, if at all, no later than 1960 when the first business interruption policy was delivered.

■ The North Carolina cases, however, demonstrate that an agreement to provide insurance may create a continuing agency relationship. *See* Wiles v. Mullinax, 267 N.C. 392, 148 S.E.2d 229 (1966); Meiselman v. Wicker, 224 N.C. 417, 30 S.E.2d 317 (1944). The evidence PMM furnished in support of its motion for summary judgment raises a strong inference that PMM accepted a continuing obligation to advise Fli-Back on its insurance needs. There are several letters from PMM to Fli-Back reviewing Fli-Back's insurance and recommending increased coverage. DX 34, DX 41, DX 51, DX 56, and DX 60. Three of these letters were written within the three-year period before this suit was instituted: DX 51 (June 19, 1968), DX 56 (Sept. 16, 1968), and DX 60 (Nov. 8, 1968). In none of these letters did PMM mention that the West Building was not covered by a business interruption policy. If an agreement to provide full insurance is proved, these letters could evidence a breach of PMM's duty to inform Fli-Back that the policies did not include the West Building.

Since such a breach would fall within the limitations period, Fli-Back's suit would not be barred. *Cf.* Bame v. Palmer Stone Works, Inc., 232 N.C. 267, 59 S.E.2d 812 (1950).[4]

The district court granted summary judgment as to the claim for reformation on the ground that it too was barred by the statute of limitations. N.C.Gen.Stat. § 1–52(9) sets up a three-year bar for suits based on fraud or mistake but provides that the cause of action is not deemed to accrue until the aggrieved party discovers the facts that constitute the fraud or mistake. The North Carolina Supreme Court has qualified the proviso, holding that the cause of action may also accrue when the aggrieved party, in the exercise of ordinary diligence, should have discovered the fraud. *E. g.*, Bennett v. Anson Bank & Trust Co., 265 N.C. 148, 143 S.E.2d 312 (1965). In this case the district judge held that ordinary diligence includes reading the policy, and since Fli-Back could have discovered the gap in coverage as early as 1960, its action for reformation would be barred. We think this holding cannot be squared with North Carolina law under the inherent limitations of summary judgment.

■■ The North Carolina Supreme Court has declined to hold that failure to read an instrument invokes the "ordinary diligence" rule as a matter of law. Peacock v. Barnes, 142 N.C. 215, 55 S.E. 99 (1906); *cf.* Elliott v. Goss, 250 N.C. 185, 108 S.E.2d 475 (1959); Ollis v. Board of Education, 210 N.C. 489, 187

S.E. 772 (1936).[5] It has also held that a fiduciary relationship between the parties, including an agency relationship that entails a duty of disclosure, may excuse the plaintiff's delay in discovering the fraud or mistake. Whether it does or not is, of course, a question for the trier of fact. Bennett v. Anson Bank & Trust Co., *supra;* Vail v. Vail, 233 N.C. 109, 63 S.E.2d 202 (1951); Small v. Dorsett, 223 N.C. 754, 28 S.E.2d 514 (1944). Summary judgment is inappropriate if material facts and permissible inferences are in genuine dispute. Here, the applicability of the statute of limitations depends on facts and inferences that have not yet been determined. It is not enough for defendants merely to invoke the statute.

■ Defendants have advanced another ground in support of the summary judgment, citing North Carolina cases to the effect that equity will not grant reformation to a person who fails to read his contract. Setzer v. Old Republic Life Ins. Co., 257 N.C. 396, 126 S.E.2d 135 (1962); W. B. Coppersmith & Sons, Inc. v. Aetna Ins. Co., 222 N.C. 14, 21 S.E.2d 838 (1942). The North Carolina Supreme Court has undermined those cases, holding that failure to read an instrument may be negligence, but that whether it bars reformation depends on the facts of the particular case. McCallum v. Old Republic Life Ins. Co., 262 N.C. 375, 137 S.E.2d 164 (1964). On this issue Fli-Back may also find a helpful analogy in Gaston-Lincoln Transit, Inc. v. Maryland Casualty Co., 20 N.C.App. 215, 201 S.E.2d 216 (1973), cert.

---

4. The theory of a continuing duty and separate breaches, independent of the initial delivery of the policy, make plaintiffs' allegations analogous to *Bame* and differentiate them from Matthieu v. Piedmont Natural Gas Co., 269 N.C. 212, 152 S.E.2d 336 (1967), in which the defendant's duty terminated on installation of a defective heating/cooling system. The proof in Fli-Back's case will, of course, determine which of these cases controls the statute of limitations issue. *See also* Case v. Ewbanks, Ewbanks & Co., 194 N.C. 775, 140 S.E. 709 (1927) (holding in another context that

cause of action against insurance agent did not arise until company's nonliability was adjudged).

5. Moore v. Fidelity & Casualty Co., 207 N.C. 433, 177 S.E. 406 (1934), is not to the contrary. The court did not hold that the cause of action accrued as a matter of law when the plaintiff received the surety bond without reading it. It only affirmed a factual finding, entered after a bench trial, to the effect that plaintiff could have discovered the mistake by reading the bond, holding that on those facts, the action was barred under the rule of Peacock v. Barnes.

allowed, 284 N.C. 623, 202 S.E.2d 273 (1974).

Because there are undetermined material facts on the crucial issues of this case, we reverse the entry of summary judgment and remand for trial.

Reversed and remanded.