THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CHARLES H. JOYCE, Defendant.

County Court, Allegany County, June 4, 1948.

*E. Allen Mapes, District Attorney,* for plaintiff.

*Francis B. O'Connor* for defendant.

HOPKINS, J.    Charles Henry Joyce was indicted by an Allegany County Grand Jury for the crime of manslaughter in the second degree in violation of subdivision 3 of section 1052 of the Penal Law.   The indictment charged the defendant with having caused the death of one  Myron Harold Haseley  by an act of culpable negligence.   The indictment was transferred to County Court and thereafter a recommendation was made that the defendant be tried as a youthful offender.   This recommendation was approved by the court.   The defendant pleaded not guilty to the information filed by the District Attorney charging the defendant with being a youthful offender in that " the said Charles Henry Joyce on the 25th day of November, 1947, at the Town of Willing, Allegany County, New York, by an act of culpable negligence and by the use of a shotgun, caused said shotgun to be discharged and to strike and kill one Myron Harold Haseley ".

The court accepts the proof as made by the People to be substantially as follows:  That Charles Henry Joyce on the 25th day of November, 1947, was eighteen years of age and resided at Andover, New York.

That on the evening of the 24th of November, 1947, Charles Henry Joyce stayed with his uncle, Forest Graves, in the town of Willing.

That on the morning of November 25, 1947, shortly after 7 o'clock a party of hunters left the residence of Sina Monroe, who lived in the immediate vicinity and who was a grandmother of the defendant.   This party went in a northwesterly direction. Myron Harold Haseley was a member of the first party.   Joyce says he did not see the party leave.   Shortly after the first party left, Joyce, together with three other men, left the grandmother's house and went in a generally northerly direction.

Both parties left from the same point on the Hallsport-Stannards Highway, which road runs in a generally easterly and westerly direction. There is a large cleared area lying northerly of the Monroe residence and in the vicinity of a creek which runs generally parallel with the highway. From this creek the terrain slopes rapidly upward until it reaches the top of a rather high hill. On top of this hill there is a field, a wooded area, and the terrain then slopes downward from the top of the hill in a northerly direction so that the area in which the accident occurred is the northerly side of the hill or range over which the hunting parties traveled.

The proof shows that the Haseley party went northwesterly from the Monroe house and were not in sight of the party in which Joyce traveled; that Joyce's party went almost due north over the range; that while going up the southerly side of the range the Joyce party saw some deer; some of the party shot at the deer. The party then proceeded over the range. Joyce, bearing to the left and going down the northerly side of the hill or range, took a position just northerly of a lease road and while standing in this position Joyce shot at what he thought to be the rear end of a deer. Joyce admits that he fired a shot and that he did not hear any other shooting in the area in which he stood. After shooting he went in the general direction of where he thought he saw the deer and after traveling a short distance joined another member of the party and told that member that he had shot at a deer. They then proceeded together for a short distance and discovered the body of Mr. Haseley lying in the snow. Shortly after this another member of the party joined Joyce and upon being informed by this member that the man was dead, Joyce and another member of the party, went back to the Monroe house, called the coroner and the State police, all of whom came as soon as possible and removed the body.

The State police then took up the investigation of the matter and found a discharged 12 gauge shotgun shell in the snow at a point 214 feet from the body of Mr. Haseley. This shotgun shell was similar to the shells that Joyce was using and unlike any other shell used by either party. Joyce says he shot at the point where the shell was found but does not believe he shot in the direction of the dead man, but thought he shot farther to the north of the body. There were no deer tracks in the immediate vicinity of the body but there were deer tracks at the top of the hill over which Joyce had just proceeded, perhaps 200 feet away.

It had been snowing and blowing that morning and the trees were heavily laden with snow. In the immediate vicinity there were numerous trees and small brush.

After the discovery of the shotgun shell Trooper Cole and Corporal Biley of the State police made some observations with reference to the conditions in the immediate vicinity. Trooper Cole testified that he stood at the exact point where Mr. Haseley stood before he was shot and that Corporal Biley stood at the point where the shotgun shell was found and that the distance between these two points was 214 feet; that all that could be seen of a person standing at the point where Mr. Haseley stood by a person standing at the point where the shell was found were the legs below the knee; the reason for this being, that there was a hemlock tree just off a straight line between these two points and that the branches of this tree intercepted the view.

The dead man was dressed in a scarlet red coat, corduroy greenish trousers and hightop laced boots. The boots were described by two witnesses, one saying that they had greenish-yellow tops, and the other witness described them as having fawn-colored rubber tops about sixteen inches high.

The autopsy revealed that the dead man had been killed by a bullet or slug which entered his body just below and to the back of his right armpit; that the bullet or slug went clear through the body and out on the left side severing the aorta; that death was almost instant.

From the foregoing facts and such other facts as have not been enumerated the court must determine:

1 — Did the defendant Charles Henry Joyce fire the slug which killed Myron Harold Haseley,

2 — If he did, were the acts of the defendant culpable negligence and of such a character as to make him guilty of the crime charged in the information.

There is no doubt in the mind of the court but that Charles Henry Joyce fired the slug or bullet that killed Myron Harold Haseley.

To make the accidental killing of Mr. Hasely a crime there must be something more than ordinary negligence. The killing must have been the result of culpable negligence. In *People* v. *Angelo* (246 N. Y. 451, 453) the court says " Any killing is homicide — either murder or manslaughter — unless the act is excusable or justified. With the latter exception we do not here deal. It is excusable, however, if the homicide is committed

by an accident or misfortune in doing a lawful act by lawful means with ordinary caution without unlawful intent. \* \* \* ' Ordinary caution ' must mean the absence of culpable negligence \* \* \*."

What then is culpable negligence?

In *Brown* v. *Shyne* (242 N. Y. 176, 183) Judge LEHMAN says " the charge of manslaughter could be sustained only if the defendant's negligence reached beyond the bounds of lack of skill and foresight where civil liability begins to a point where criminal liability is imposed because the negligence is not merely venial but is ' culpable,' involving fault for which the State may demand punishment."

Further quoting *People* v. *Angelo* (*supra*, p. 457) " ' Culpable ' negligence is therefore something more than the slight negligence necessary to support a civil action for damages. It means disregard of the consequences which may issue from the act, and indifference to the rights of others."

Applying the foregoing definition to the pertinent facts in this case.

Joyce was hunting deer. He had seen deer a few minutes before the accident. He then continued over the hill into a piece of woods. It had been storming. The ground and trees were covered with snow. Joyce shot at what he thought to be the hind end of a deer; it turned out to be a man. The only part of the man which was visible through the trees and brush were his legs below the knees. The dead man wore laced rubber boots which were of a greenish-yellow or fawn color. There is no proof that Joyce knew Haseley or any other person was in shotgun range.

To find the defendant guilty as charged one must find that the defendant shot his gun with a disregard of the consequences which might ensue and an indifference to the rights of others. This I cannot do. I believe the similarity in the color of the decedent's boot tops and the legs of a deer led the defendant to believe he saw a deer, and that he shot at it believing it to be a deer.

No one is deemed to have committed manslaughter only because he caused the death of another, nor because he may not have used the proper caution in determining whether the deer had horns or not. What amount of negligence can be called culpable is a question of degree to be ascertained from the facts of each case.

A recent case, *People* v. *Wells* (186 Misc. 979, 980 [1946]),

was dismissed as being insufficient in law to sustain the indictment. The facts are briefly as follows. The defendant and his seven-year-old son went to a locality known as Beaver Meadow for the purpose of fishing. The defendant took with him a 30–30 caliber rifle. After spending the afternoon fishing, the defendant and his son sat down at the edge of the water near the dam and that while they were sitting there his son yelled " there is a fox ". The defendant said that he looked and saw something moving at a distance of about 500 feet away and believing it was a fox, he fired his gun at the moving object. Immediately following the first shot, he fired a second shot and then he heard a yell, and walked toward the direction from which the yell had come, and there found the deceased, who had been mortally wounded by one of the shots fired by the defendant. The defendant stated that he had not seen or heard the deceased prior to the shooting. That he did not know of the presence of any other person other than his son in the vicinity. There was evidence to the effect fox were prevalent in the locality.

The court in dismissing the indictment said (p. 982) " Tragic as the consequences were, the defendant can be held criminally responsible only, if his acts under the circumstances constituted a reckless disregard of the consequences of his act, and an indifference as to the rights of others." Then quoting from *People* v. *Carlson* (176 Misc. 230, 232) " Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, do not constitute culpable negligence. There must exist in the mind of the accused at the time of the act or omission, a consciousness of the probable consequences of the act, and a wanton disregard of them."

The death of Mr. Haseley is regrettable. Perhaps out of tragedy of others we may learn a lesson. The proof in this case shows the deceased wore a bright red jacket, dark green corduroy trousers, sixteen-inch laced boots with yellowish or fawn-colored tops. The trees and brush hid all of decedent's body from the defendant except his legs below the knees. In my opinion the yellowish or fawn-colored boots were a contributing cause of Mr. Haseley's death. These could, and probably were, mistaken for the legs of a deer. A hunter for his own protection should use every possible caution in the manner of his dress, keeping in mind the game that is being hunted, the condition of the woods, and the possibility that some color

scheme of the dress may be mistaken for game. One can easily see the dangers of wearing a black or gray hat in hunting squirrels, or even a red jacket in hunting red fox, or as in this case fawn-colored boots in hunting deer.

Anyone who has ever hunted deer in the southern tier of New York, with shotgun and slugs knows there is a great deal of careless shooting: Many hunters will shoot at ridiculous range at a deer and without regard to who or what may be in the woods. It has always been a mystery to this court how so few people actually get killed or wounded each year here in New York during the deer season.

Some effort should be made to restrain this careless shooting. Perhaps an enactment of a statute similar to those existing in Pennsylvania might help. Pennsylvania has recognized the dangers of this careless hunting and also the difficulties of trying to convict a person of manslaughter in an accidental killing of a human being. As a remedy it has enacted some special statutes and incorporated them in the Game Law. Subdivision (a) of section 1311.825 reads as follows: "*Shooting at Human Beings in Mistake.* Every person who shall shoot at a human being in mistake, in violation of the provisions of this section, but who shall not injure the human being shot at, shall, upon conviction, for the first offense be sentenced to pay a fine of not less than one hundred dollars or more than three hundred dollars, and in addition to such fine shall be denied the right to hunt or trap in this Commonwealth, with or without a license, for a period of two years from the date of conviction, to be noted upon the record of conviction as part of the sentence."

This court recommends serious study on the part of the Conservation Commission of New York State, with the view of sponsoring similar legislation for this State.

It is the opinion of this court the People have failed to make proof that the defendant by an act of culpable negligence caused the death of Myron Harold Haseley.

Submit an order dismissing the indictment and the information in the youthful offender charge.