BERNADINE WILES, D/B/A CENTERVIEW TAXI, v. RALPH P. MULLINAX, JR., AND MULLINAX INSURANCE AGENCY, INC.

(Filed 20 June, 1967.)

**1. Insurance § 8—**

Where insurance agents are sued for breach of duty to use reasonable diligence to obtain insurance coverage in accordance with contractual obligations and breach of duty to notify the proposed insured of its failure to obtain such coverage, the agents are entitled to defend on the ground that in fact they did procure insurance in effect at the time of the loss, and, upon evidence which would support such finding, to argue such contention to the jury and to read to the jury, in the course of the argument, the pertinent statute and a decision of the Supreme Court on the question. G.S. 84-14.

**2. Judgments § 29—**

Adjudication by the Industrial Commission that the employer was uninsured at the time of the employee's injury is not conclusive upon insurance agents who were not parties to the suit, even though one of them was a witness, and does not preclude such agents from asserting in a sub-

sequent suit against them by the employer that they had in fact obtained valid insurance in effect at the time of the accident.

**3. Insurance § 8—**

 In a suit against insurance agents for their failure to provide insurance coverage and their failure to advise the proposed insured of such failure, a binder stipulating dates of coverage which do not include the date of the injury causing the loss is no defense, the question whether the dates as stipulated in the binder might be reformed for mistake not being presented.

**4. Insurance § 3—**

 The insured may accept the benefits of a binder even though he had no knowledge that the insurance broker had issued the binder for his protection, and delivery of the binder to him is not essential.

**5. Same—**

 The extension of credit to the insured for the premium does not destroy the effectiveness of a binder.

**6. Same—**

 In order to be valid, a binder need not be a complete contract, since it is merely a memorandum of the most important terms of a preliminary contract of insurance, and where the contemplated policy is required by statute, the binder is deemed to incorporate all of the terms of the statutory policy, and no specific form or provision is necessary to constitute a valid memorandum.

**7. Same; Insurance § 8; Master and Servant § 80—　Valid binder for compensation insurance cannot be cancelled until after statutory notice.**

 In this action against insurance agents for breach of duty to exercise due diligence to provide compensation insurance coverage and for failure to notify the proposed insured of their failure to procure such insurance, testimony of a defendant agent that he had authority from insurer to issue a binder, and that some 26 days prior to the loss he forwarded to insurer a document constituting a binder covering a period of one year beginning some 11 days prior to the loss in question, is sufficient to support a finding that there was a valid binder in force on the date of the loss, notwithstanding advice by insurer to the agency nine days before the loss in question that the insurer would not accept the risk, since a valid binder for workmen's compensation insurance cannot be terminated except by giving to insured 30 days notice. G.S. 97-99.

APPEAL by defendants from *Riddle, S.J.*, at the November 1966 Session of CABARRUS.

This is an action for damages by reason of the alleged negligent failure of the defendants to procure for the plaintiff workmen's compensation insurance coverage and their negligent failure to notify her that they had not done so. The plaintiff alleges that, by reason of these negligent omissions, she was without such insurance coverage on 29 November 1958, that one of her employees then sustained

an injury by accident arising out of and in the course of his employment and resulting in his death, and that she was compelled, by the award of the North Carolina Industrial Commission, to pay compensation to the dependents and to employ counsel to defend her against their claim.

The defendants, in their answer, admit that as agents of the Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, hereinafter referred to as PT&F, they negotiated the issuance by it to the plaintiff of a standard workmen's compensation insurance policy for the period beginning 8 November 1955 and ending 8 November 1956, which policy was renewed in 1956 and again in 1957, the latter renewal policy expiring 8 November 1958, and that no renewal thereof was issued. They allege that they bound both Royal Indemnity Company and Dixie Fire and Casualty Company, hereinafter referred to as Royal and Dixie, respectively, to insure the plaintiff and, consequently, that she was so insured at the time of the accident.

The following issues were submitted to the jury and answered as indicated:

"1. Did the defendants undertake to procure workmen's compensation insurance coverage for the plaintiff, as alleged in the complaint?

"ANSWER: Yes.

"2. Did the defendants negligently fail to procure such workmen's compensation insurance coverage, as alleged in the complaint?

"ANSWER: Yes.

"3. Did the defendants fail to timely notify the plaintiff of their failure to procure workmen's compensation insurance coverage, as alleged in the complaint?

"ANSWER: Yes.

"4. What amount of damages, if any, is the plaintiff entitled to recover of the defendants?

"ANSWER: $9,300."

From a judgment in accordance with the verdict, the defendants appeal. Their assignments of error, brought forward in their brief, are: (1) The court erred in excluding certain testimony offered by the defendants; (2) the court erred in refusing to allow the defendants' attorney to read to the jury certain passages from the statutes, and decisions relating to the effect of insurance binders and to argue that the plaintiff had been afforded coverage by such binders; and (3) the court erred in failing to charge with reference to the effect

of such a binder and concerning the defendants' evidence relating thereto.

The plaintiff's evidence was to the effect that: In 1958 and for several years prior thereto, she owned and operated a taxicab business in Kannapolis. All of her insurance coverage was placed through the defendants. When the individual defendant, stipulated to have been acting within the scope of his agency for the corporate defendant, solicited her workmen's compensation insurance business, he told her that he would take care of the matter of renewing the coverage as he had been doing with reference to other types of insurance. This he did year by year. The policy for the period ending 8 November 1958 was issued by PT&F. The plaintiff received from the defendant an invoice for the premium on that policy, which stated: "We have renewed the above policy because as you know you have an established account. This entitled you to automatic renewal." The plaintiff was never notified that PT&F would not renew the coverage. She did not know that she was without workmen's compensation insurance coverage until the defendants so informed her after the injury and death of her employee on 29 November 1958. The widow of the employee filed a claim with the North Carolina Industrial Commission which conducted a hearing, to which the plaintiff, Royal and Dixie were parties. The individual defendant appeared as a witness at that hearing but neither of the defendants was made a party. The Commission found as a fact and concluded that the plaintiff was uninsured, dismissed Royal and Dixie from the proceeding, and rendered an award in favor of the claimant against the plaintiff. The plaintiff paid the award and also paid her own attorney's fee.

The individual defendant testified: The defendants' agency contract with PT&F was terminated in July 1958. The plaintiff was not notified of this and was not notified of any effort made by the defendants to place her workmen's compensation insurance with any other company. The termination of the agency did not affect the policy previously issued by PT&F to the plaintiff, which expired 8 November 1958. In October 1958, the defendants forwarded to Royal a document which they contend was a binder. This document stated, among other things: "Item 2. Policy Period: From November 8, 1957 to November 8, 1958." The defendants received a reply from Royal dated 3 November 1958, stating that Royal was unwilling to provide the requested coverage. Thereupon, the defendants forwarded to Dixie a document which the defendants contend was a binder for this risk. That document, among other things, stated: "Item 2. The period during which the Policy shall remain in force, unless canceled

as in the Policy provided (herein called the Policy Period) shall be from 11/14/58 to 11/14/59." On 20 November 1958, nine days before the death of the plaintiff's employee, the defendants received from Dixie's general agent a letter stating, "We are sorry to advise that coverage will not be acceptable to the company." At no time, prior to the death of the employee, was the plaintiff informed of any of these documents or rejections or that the PT&F policy had expired without renewal.

The individual defendant testified further:

> "In the course of our business we actually write insurance policies, but we do not write Workmen's Compensation policies. In order to obtain Workmen's Compensation policies we bind the risk, advise the company of the binder and send the company the information for them to prepare the policy. The company sends us the policy. * * * As an agent I had authority to bind."

*Hartsell, Hartsell & Mills and K. Michael Koontz for defendant appellants.*

*Williams, Willeford & Boger for plaintiff appellee.*

LAKE, J. This case was before us upon a former appeal from a judgment of nonsuit which we reversed in 267 N.C. 392, 148 S.E. 2d 229. Upon the authority of *Elam v. Realty Co.,* 182 N.C. 599, 109 S.E. 632, and other cases cited, we then held that, where an insurance agent or broker undertakes to procure a policy of insurance for another, it is his duty to use reasonable diligence to obtain it and, within the amount of the proposed policy, he may be held liable for a loss sustained by the proposed insured due to his negligent failure to do so. We further stated that if, in spite of reasonable diligence, such agent or broker is unable to procure the desired insurance coverage, it is his duty to so notify the proposed insured in order that the latter may take the necessary steps to protect himself otherwise. Since the record then before us was sufficient to permit a jury to find a breach of such duties by the defendants, resulting in loss to the plaintiff, we reversed the judgment of nonsuit, stating, "Defendants' asserted defenses are not pertinent to this decision, which relates only to the question of the sufficiency of the evidence to survive the motion for nonsuit."

The case having been retried and the jury having returned a verdict in favor of the plaintiff, the sufficiency of the asserted defense is now brought before us by the defendants' contention that they

were not permitted by the trial judge to argue to the jury that they did, in fact, obtain for the plaintiff the desired insurance coverage.

At the close of all the evidence, in the absence of the jury, it was brought to the attention of the trial judge that the defendants' attorney intended to read to the jury, in the course of his argument, G.S. 97-99(a), which concerns cancellation of a policy of workmen's compensation insurance, together with passages from the decision of this Court in *Moore v. Electric Co.*, 264 N.C. 667, 142 S.E. 2d 659, in which this statute was held to apply to the cancellation of a binder for such insurance. The court ruled that the reading of these authorities to the jury would not be allowed. Thereupon, the defendants' attorney inquired of the court "as to whether the defendants' contentions that they had in fact obtained the insurance coverage by binders and that the evidence shows that the defendants had in fact procured the insurance by binders and that the plaintiff was insured at all times might be argued to the jury." The court ruled that such argument would be improper and not permitted. The defendants now assign these rulings as error.

The second issue submitted to the jury was, "Did the defendants negligently fail to procure such workmen's compensation insurance coverage, as alleged in the complaint?" Obviously, upon such issue, it was proper for the defendants to argue to the jury that they did procure the insurance and that it was in effect at the time of the injury to the plaintiff's employee, if there was any evidence from which the jury might so find. If the evidence would support such a finding, the defendants were entitled not only to argue their contention to the jury, but also to read to the jury, in the course of that argument, the pertinent statute and the decision of this Court upon the question. G.S. 84-14; *Wilcox v. Motors*, 269 N.C. 473, 153 S.E. 2d 76; *Brown v. Vestal*, 231 N.C. 56, 55 S.E. 2d 797; *Howard v. Telegraph Co.*, 170 N.C. 495, 87 S.E. 313.

The present record discloses that in the hearing by the Industrial Commission of the claim for compensation, filed by the widow of the deceased employee, the Commission found as a fact, and concluded as a matter of law, that at the time of the injury the present plaintiff had no workmen's compensation insurance coverage with either Royal or Dixie but was a non-insured. The Commission accordingly dismissed from the proceeding before it Royal and Dixie and awarded compensation to be paid by the present plaintiff. There was no appeal from the award of the Full Commission.

We need not determine whether, by reason of such award by the Industrial Commission, the question of the plaintiff's right against Royal or Dixie, or both of them, on the ground of the now alleged

binder or binders is *res judicata,* as between the plaintiff and those companies. For the present, it is sufficient to note that the defendants were not parties to that proceeding. That being true, the question of the effectiveness of either or both of the alleged binders on the date of the injury to the employee is not *res judicata* as to the present defendants, even though the individual defendant testified as a witness in the hearing before the Commission. *Bank v. Casualty Co.,* 268 N.C. 234, 150 S.E. 2d 396. To the general rule, that a judgment of a court is conclusive only as against the parties to the action and those in privity with them, there is an exception in favor of an employer whose alleged liability is, upon the principle of *respondeat superior,* derived through the alleged fault of an employee adjudged in a former action not to be at fault. See *Coach Co. v. Burrell,* 241 N.C. 432, 85 S.E. 2d 688, and cases there cited. This exception to the general rule has no application to the facts of this case.

We turn, therefore, to the question of whether there is, upon the present record, sufficient evidence to support a finding that, at the time of the injury to the plaintiff's employee, the plaintiff actually had workmen's compensation insurance in force. The individual defendant testified that he had authority to bind both Royal and Dixie and that he issued a binder for each. The credibility of this testimony was for the jury. The construction of the documents and their legal effect was for the court.

As to Royal, it is sufficient to note that the document which the defendants contend was a binder expressly provided for coverage from 8 November 1957 to 8 November 1958. Thus, by its terms, it would not constitute a binder in force at the time of the injury to the plaintiff's employee. Whether, upon a proper showing, it could be reformed for mistake is not a question now before us.

The document which the defendant contends bound Dixie upon this risk may not be disposed of in that manner. The individual defendant testified that he issued it as a binder and had authority from Dixie to do so. The record makes it clear that the plaintiff knew nothing whatever of the existence of this document until after her employee was injured, and after Dixie notified the defendants it rejected the risk, but this Court held in the first appeal in *Moore v. Electric Co.,* 259 N.C. 735, 131 S.E. 2d 356, that knowledge by the contemplated insured of the issuance of a binder is not a prerequisite to the validity of the binder. It having been issued for his benefit, he may elect to accept the benefits it confers. It follows that a delivery of the binder to him is not essential. The extension of credit to the insured for the premium does not destroy the effec-

tiveness of the binder. See *Lea v. Insurance Co.*, 168 N.C. 478, 84 S.E. 813; Couch on Insurance, 2d ed., § 14:29. It is not necessary in order to constitute a valid binder that the document be written in the form of a complete contract or that it set forth all of the terms. A binder is "merely a written memorandum of the most important terms of a preliminary contract of insurance." *Distributing Corp. v. Indemnity Co.*, 224 N.C. 370, 30 S.E. 2d 377. Where, as in the present instance, the policy contemplated is required by statute to be issued in a prescribed form, the binder is deemed to incorporate all of the terms of the statutory policy. *Moore v. Electric Co.*, first appeal, *supra.* No specific form or provision is necessary to constitute a memorandum, intended as a binder, a valid contract of insurance. As this Court said upon the second appeal in *Moore v. Electric Co.*, 264 N.C. 667, 142 S.E. 2d 659:

> "In insurance parlance, a 'binder' is insurer's bare acknowledgment of its contract to protect the insured against casualty of a specified kind until a formal policy can be issued, or until insurer gives notice of its election to terminate. The binder may be oral or written."

The document which the defendants contend bound Dixie upon this risk is, in form and content, sufficient to constitute such memorandum of a contract for temporary coverage. Thus, the evidence introduced by the defendants was sufficient, if found by the jury to be true, to support a finding that a valid binder was issued by Dixie. In the second appeal in *Moore v. Electric Co.*, *supra*, this Court held that a valid binder for workmen's compensation insurance cannot be terminated except by the giving to the insured of the 30 days' notice required by G.S. 97-99 for cancellation of a formal policy. It is not contended in this case that such notice was given by Dixie.

Consequently, there was evidence from which the jury could have found that, at the time the plaintiff's employee was injured, there was in effect a contract of workmen's compensation insurance procured for the plaintiff by the defendant. It follows that the defendants should have been permitted to argue this point to the jury in support of their position on the second issue and to read to the jury pertinent portions of the governing authorities. It also follows that the jury should have been instructed by the court upon the principles of law applicable to this contention of the defendants, which was not done.

We find no error in the rulings of the trial court with reference to the admission of evidence, but for the errors above noted there must be still another trial of this action.

New trial.