STATE OF NORTH CAROLINA v. TIMITHY RAY GAINEY

No. 71

(Filed 10 May 1977)

1. **Automobiles § 113.1— involuntary manslaughter — failure to stop at intersection — exceeding safe speed — sufficiency of evidence**

   In a prosecution for involuntary manslaughter evidence was sufficient to support a finding that defendant drove into an intersection without stopping, a violation of G.S. 20-158; that at the time he approached and entered it he was driving at a greater speed than was reasonable and prudent under the conditions then existing; and that defendant's violation of these two statutes constituted culpable negligence which proximately caused the death of a passenger in the vehicle with which defendant collided.

2. **Automobiles § 114.1— involuntary manslaughter — criminal negligence and proximate cause — instructions proper**

   The trial court's instructions in an involuntary manslaughter prosecution were sufficient where they informed the jury that the State must prove beyond a reasonable doubt (1) that defendant had violated a safety statute (either G.S. 20-141(a) or G.S. 20-158) in a criminally negligent manner and (2) that such violation was the proximate cause of a passenger's death; and the court explained the term "proximate cause," explained what was required for a violation to be criminally negligent, and defined a reckless violation.

APPEAL by the State pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals vacating the judgment entered by *Collier, J.,* at the 1 December 1975 Session of the Superior Court of ROWAN, 29 N.C. App. 653, 225 S.E. 2d 843 (1976). This appeal was docketed and argued as Case No. 69 at the Fall Term 1976.

Upon an indictment charging him with the unlawful and felonious slaying of Carrie Freeze, defendant was tried and convicted of involuntary manslaughter. From a sentence of three to five years he appealed to the Court of Appeals.

The State's evidence, summarized except when quoted, tended to show the following facts:

At approximately 8:00 p.m. on 7 October 1973 Mrs. Julia Ann Freeze was operating a pickup truck in a westerly direction on West C Street in Rowan County. Her nephew and her mother, Mrs. Carrie Freeze, were riding in a detachable camper unit, fastened to the truck bed with four steel cables. As Mrs. Freeze approached the "T" intersection of West C and Winona

Streets near Kannapolis, she was driving at a speed of 30 mph. The lights on her vehicle were burning. At the same time defendant was approaching the intersection on Winona Street. He was driving his 1963 Ford at a speed in excess of 35 mph. Both streets were paved roads, but the intersection was not controlled by any traffic light. There was a stop sign on Winona Street; none on West C Street. As Mrs. Freeze entered the intersection she saw that defendant's vehicle was also entering and "in a flash it came out." Her truck hit the side of his car and the vehicles overturned. The camper was torn from the truck, and both it and the Ford were turned upside down. The vehicles were totally destroyed and the back of the camper was demolished. Mrs. Carrie Freeze died three weeks later from the head and chest injuries she suffered in the collision.

The investigating patrolman, J. E. Everett, did not know the posted speed limit on Winona Street as it approached the intersection. He found no skid marks within the area of the intersection. He detected a "moderate odor of some alcoholic beverage" from defendant's breath, and he "observed four or five beer cans in the [defendant's] vehicle. There was the odor of some alcoholic beverage." Defendant "indicated" to the patrolman that "something had happened to his car." The next day Everett examined the car in a garage in Kannapolis. He depressed the brake pedal and "it was a full brake pedal," which did not go to the floor. In his opinion it was adequate to stop a vehicle.

Defendant's evidence, consisting of his testimony only, tended to show:

At the time of the collision he had traveled about one half a mile on Winona Street. Where he came on to the street, "there is a sharp curve to the right, and then it goes right back to the left" and "straight up to C Street. . . . The sharp curve is about three, four-tenths miles to West C Street." Defendant was returning to his home in Concord from the Charlotte Motor Speedway, where he had spent the day and the latter half of the preceding night in a camper with friends. He had just left the home of one who lived "off Winona Street." When defendant was "already right at the intersection" of Winona and West C Streets he saw the camper coming and applied his brakes. When they went all the way to the floor he pumped them but was unable to stop. He entered the intersection at a speed of

about 35 mph. He didn't intentionally enter West C Street without stopping, but when he saw the camper coming he knew there was no way for him to get out of its path. A few days after the collision defendant personally checked the brakes on his car, and "they were showing a little over half a pedal." After he was charged with manslaughter he "had a man" examine the brakes, but "he said he didn't see anything wrong."

Defendant testified that he had drunk three beers during the day of the collision; that he had consumed the last one prior to 4:00 p.m.; that on the back seat of his car he had a cooler containing seven bottles of beer and the collision "busted the beers" and he "was wet from it."

On 7 October 1973, in consequence of his collision with Mrs. Freeze's camper, defendant received a citation charging him with a "stop sign violation." He "paid it off"; he had "always paid them off." In addition to this violation on 7 October 1973, between May 1968 and August 1975, defendant was seven times convicted of speeding, once for failing to yield the right-of-way, and once for "running a red light."

Upon defendant's appeal from his conviction of manslaughter, the Court of Appeals ordered a new trial upon the ground that Judge Collier had committed error in his charge to the jury.

*Attorney General Rufus L. Edmisten, Special Deputy Attorney General John R. B. Matthis, and Associate Attorney Jo Anne Sanford Routh for the State.*

*Robert M. Davis for defendant appellee.*

SHARP, Chief Justice.

[1] Applying the well-established rules for testing the sufficiency of the State's evidence to carry the case to the jury, the Court of Appeals correctly held that the evidence adduced at the trial survived defendant's motions for nonsuit. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). Clearly, the State's evidence was sufficient to establish that defendant failed to bring his vehicle to a stop on Winona Street before entering its intersection with C Street; that his failure to yield the right-of-way to the Freeze pickup truck approaching on West C Street, a designated "main-travelled or through highway," was a violation of G.S. 20-158(a) (1965); and that this statutory

violation was culpable negligence which proximately caused the death of Mrs. Freeze. We hold, however, that the Court of Appeals erred when it concluded that the State had offered no evidence tending to show that at the time defendant approached and entered the intersection he was operating his vehicle at an unlawful rate of speed and that the trial judge had, therefore, committed prejudicial error in charging upon a state of facts not presented by the evidence.

Since the evidence fails to disclose the presence of any signs giving notice that a lower speed limit had been established for the *locus in quo,* we must assume that the speed limit for that area was 55 mph. G.S. 20-141(b)(4) (1965). No witness testified that defendant was traveling at a speed in excess of 55 mph. However, a speed less than the maximum limit designated in the statute is not per se a lawful speed, for G.S. 20-141(a) (1965) provided, "No person shall drive a vehicle on a highway or in a public vehicular area at a speed greater than is reasonable and prudent under the conditions then existing." The meaning and intent of this section was fully stated in G.S. 20-141(c) (1965) as follows:

"The fact that the speed of a vehicle is lower than the [statutory] limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway, and to avoid causing injury to any person or property either on or off the highway, in compliance with legal requirements and the duty of all persons to use due care."

(Here we note that the section quoted above was not specifically reincorporated in G.S. 20-141 when it was rewritten by 1973 Sess. Laws, ch. 1330, § 7, effective 1 January 1975. Notwithstanding its omission, G.S. 20-141(a) (1975) still encompasses all its provisions. *See Cassetta v. Compton,* 256 N.C. 71, 74, 123 S.E. 2d 222, 224 (1961).)

The State's evidence tended to show that defendant approached the "T" intersection in the nighttime at a speed "exceeding 35 miles per hour" and, without stopping or slowing

State v. Gainey

down, entered it "just like a flash of light." Defendant's version was, "My speed was 35 miles per hour. I didn't try to make a turn after I entered the intersection because I didn't see the car until I was right on the intersection. There was no use to turn." When the Freeze pickup truck hit the side of defendant's Ford, both vehicles were overturned and destroyed. The camper was turned upside down and Mrs. Carrie Freeze, who was riding in it, received fatal injuries.

Defendant testified that after he came on Winona Street he negotiated two sharp curves and then drove four-tenths of a mile on a straight, dry, paved road before he entered the intersection. He offered no explanation of his failure to see the approaching Freeze truck and camper, and his statement that his brakes failed was not corroborated either by the investigating highway patrolman or defendant's "man," both of whom examined his brakes after the accident.

Clearly, the foregoing evidence was sufficient not only to support a finding that defendant drove into the intersection without stopping, a violation of G.S. 20-158 (1965), but also that at the time he approached and entered it he was driving at a greater speed than was reasonable and prudent under the conditions then existing, a violation of G.S. 20-141(a) (1965). It is equally clear that the evidence was entirely adequate to support a finding that defendant's violation of these two statutes constituted culpable negligence as that term is defined in *State v. Weston*, 273 N.C. 275, 159 S.E. 2d 883 (1968) and the cases cited therein.

[2] Apprehending that the trial judge "could have left the impression with the jury that a mere violation of G.S. 20-158, proximately resulting in death, would warrant a conviction of involuntary manslaughter," the Court of Appeals held the following instruction to be prejudicial error:

"So I charge that if you find from the evidence beyond a reasonable doubt that on or about October 7, 1973, at about 7:55 p.m., Timithy Ray Gainey intentionally or recklessly drove his motor vehicle at a speed that was greater than reasonable and prudent under the conditions then and there existing, or drove his vehicle through a stop sign without braking his vehicle to a stop, thereby proximately causing the death of Carrie Freeze, and that the violation or violations did not result from brake failure on the defendant's car, it would be your duty to

return a verdict of guilty of involuntary manslaughter. However, if you do not so find or if you have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty, but would return a verdict of not guilty."

Standing alone, the foregoing mandate would be inadequate. However, it is axiomatic that the trial judge's charge must be considered as a whole and construed contextually. The fact that some expressions, standing alone, might require amplification, will afford no ground for reversal when the charge as a whole presents the law fairly and clearly to the jury. *E.g., State v. Lee*, 277 N.C. 205, 214, 176 S.E. 2d 765, 770 (1970) ; 4 Strong's N. C. Index 3d, *Criminal Law* § 168 (1976).

Immediately preceding the portion of the charge quoted above the judge had instructed the jury that in order to convict defendant of involuntary manslaughter the State must prove beyond a reasonable doubt (1) that defendant had violated a safety statute (either G.S. 20-141(a) or G.S. 20-158) in a criminally negligent manner and (2) that such violation was the proximate cause of Carrie Freeze's death, that is, "A real cause, a cause without which [her] death would not have occurred." He also charged that "for a violation to be criminally negligent it must have been committed intentionally or recklessly," and he defined a reckless violation as one which, when judged by the rule of reasonable foresight, shows the violator to have been "heedlessly indifferent to the safety and rights of others."

The evidence in this case was brief and uncomplicated. Except for the issue of brake failure, it was relatively free from conflict. As a result, we cannot believe the jury could have misunderstood either the court's definition of criminal negligence or instruction that before they could convict defendant of involuntary manslaughter they must be satisfied beyond a reasonable doubt that *criminal* negligence on the part of defendant was a proximate cause of the death of Carrie Freeze.

We hold, therefore, that the charge of the trial judge meets the requirements of this case. At the same time, however, we are constrained to say that the fuller and more explicit exposition of the law of culpable negligence contained in such cases as *State v. Weston, supra; State v. Hancock*, 248 N.C. 432, 435, 103 S.E. 2d 491, 494 (1958) ; and *State v. Cope*, 204 N.C. 28, 167 S.E. 456 (1933) is more likely to enlighten the jury and

Bowen. v. Motor Co.

to pass muster on appeal. For many years the carefully phrased statements of Chief Justice Stacy in *State v. Cope, supra,* have served both trial and appellate court judges well when they were called upon to explain the difference between civil and criminal negligence, and we recommend their continued use.

The decision of the Court of Appeals vacating the judgment from which defendant appealed and ordering a new trial is reversed; and this cause is remanded with directions that it be returned to the Superior Court of Rowan for the reinstatement of the judgment.

Reversed and remanded.