STATE OF NORTH CAROLINA v. STEPHEN KEITH HALL

No. 824SC479

(Filed 1 February 1983)

1. **Homicide § 21.9— involuntary manslaughter—shooting of another hunter**

    The evidence was sufficient for the jury to find that defendant's accidental shooting of another deer hunter constituted culpable negligence so as to support his conviction of involuntary manslaughter where it would permit the jury to find that defendant did not know at what he was shooting when he turned and fired his rifle upon hearing a rustle in the brush.

2. **Homicide § 27.2— involuntary manslaughter—instructions—proximate cause—foreseeability**

    In a prosecution for involuntary manslaughter arising out of defendant's accidental shooting of another deer hunter, the trial court committed prejudicial error in failing to define proximate cause in the instructions or to state that foreseeability was a requisite of proximate cause.

3. **Criminal Law § 102.6— jury argument—civil and criminal negligence**

    In this prosecution for involuntary manslaughter, the trial court erred in refusing to permit defense counsel to explain the difference between civil and criminal negligence in his closing argument to the jury. G.S. 84-14.

4. **Criminal Law § 33.4— reaction of victim's wife—defendant's failure to contact victim's wife—irrelevancy—harmless error**

    Testimony in an involuntary manslaughter case relating to the reaction of the victim's wife when she was told of the victim's death and defendant's failure to contact the victim's wife after the death was irrelevant, but the admission of such testimony was not prejudicial error.

5. **Criminal Law § 33.3; Homicide § 15— shooting of another hunter—no hunting license—shooting deer at night—irrelevancy**

    In a prosecution for involuntary manslaughter arising out of defendant's accidental shooting of another deer hunter, the trial court erred in the admis-

sion of testimony (1) that defendant did not have a hunting license at the time he shot the victim and (2) that defendant shot a deer at night several weeks after the victim's death.

Judge HEDRICK dissenting.

APPEAL by defendant from *Lane, Judge.* Judgment entered 20 January 1982 in Superior Court, JONES County. Heard in the Court of Appeals 10 November 1982.

Defendant, Stephen Keith Hall, age 21, was convicted of involuntary manslaughter and given a three-year active prison sentence, the presumptive term under the Fair Sentencing Act. Following the entry of judgment, defendant gave notice of appeal.

*Attorney General Edmisten, by Assistant Attorney General Robert R. Reilly, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender James H. Gold, for defendant appellant.*

BECTON, Judge.

I

The charge against the defendant arises out of the shooting death of Freddie Futreal on the morning of 12 October 1981. Both the defendant and Futreal were hunting deer at the time. They were members of different hunting parties, however. The State contends that, although defendant did not intentionally shoot Futreal, defendant's actions nevertheless constituted criminal negligence. The defendant contends the shooting was an accident. Defendant testified that he had been following a deer, that he had not seen any other hunters in the area, that he accidentally shot Futreal when he heard a rustle in the brush, and that he fired at what he thought was the white and brown coloring of a deer.

The issues on appeal are (i) whether the State's evidence supported a finding of defendant's culpable negligence; (ii) whether the trial court erred in refusing to allow defense counsel to explain the difference between civil and criminal negligence in his closing argument; (iii) whether the trial court erred in admitting evidence about how Futreal's wife responded when she was told that he had been shot; (iv) whether the court erred in admitting evidence that defendant "firelighted" deer one month subsequent

to the shooting of Futreal, which, arguably, tended to show defendant's culpably negligent disposition; (v) whether the court erred in allowing the State to cross-examine a witness about the proper handling of a firearm; (vi) whether the trial court properly charged the jury on defendant's not having a hunting license; and (vii) whether the trial court erred in failing to charge the jury on foreseeability and the definition of proximate cause.

Although we grant a new trial because the trial court failed to define proximate cause and to give instructions on foreseeability, it is necessary to discuss some of the other issues raised since those issues are likely to arise on retrial.

II

[1] The defendant contends that the evidence was insufficient to support his conviction for involuntary manslaughter because his accidental shooting of another deer hunter did not constitute culpable negligence.

> Culpable negligence in the criminal law requires more than the negligence necessary to sustain a recovery in tort. Rather, for negligence to constitute the basis for the imposition of criminal sanctions, it must be such reckless or careless behavior that the act imports a thoughtless disregard for the consequences of the act or the act shows a heedless indifference to the rights and safety of others. As is stated in 1 Wharton, *Criminal Law and Procedure*, § 291 at 613 (1957), 'There must be negligence of a gross and flagrant character, evincing reckless disregard for human life. . . .'

*State v. Everhart*, 291 N.C. 700, 702, 231 S.E. 2d 604, 606 (1977). Finding no North Carolina cases involving manslaughter convictions arising from hunting accidents, the defendant relies on a New York case, *New York v. Joyce*, 192 Misc. 107, 84 N.Y. Supp. 2d 238 (1948) in which the court found no culpable negligence. Although the facts in *Joyce* are similar to the facts in this case, we are not persuaded by the reasoning in the *Joyce* case.

State v. Hall

The North Carolina case closest on point, which defendant cites, is *State v. Everhart.*[1] In *Everhart,* "the defendant was a young girl with an I.Q. of 72. She gave birth to a baby while lying on the floor and dropped the newborn infant while attempting to place him upon the bed. Thinking the baby was dead, [he did not cry nor move] she wrapped him in a blanket." 291 N.C. at 704, 231 S.E. 2d at 607. The baby died. The defendant in *Everhart* had a basis for believing the child to be dead. As the Supreme Court said:

> [T]he defendant had just delivered a baby without any assistance; was ill; and was scared. The doctor found no evidence of trauma or a purposeful act upon the body of the baby. He concluded that the child was accidentally smothered or died of neonatal respiratory failure—the failure to have proper stimulation to cause continued breathing. Under these facts there was not sufficient evidence to show that defendant acted in such a manner as to import a thoughtless disregard of the consequences of her act or heedless indifference to the rights and safety of the baby.

*Everhart,* at 704-05, 231 S.E. 2d at 607.

Although *Everhart* suggests that a tragic result, standing alone, is not enough to establish criminal negligence, *Everhart* will not allow one to shoot and kill another when the shooter does not know at whom or what he is shooting.

From the evidence presented in this case the jury could find that defendant did not know what he was shooting at when he turned and fired his Winchester 30-5 rifle. There were no eyewitnesses to the shooting, but defendant made several statements to State witnesses which, while not necessarily inconsistent, would allow the jury to conclude that he was culpably negligent. David Barrow, after hearing a shot and while going to

---

1. We note that *State v. Horton,* 139 N.C. 588, 51 S.E. 945 (1905) involves a manslaughter conviction arising out of a hunting accident, but the jury returned a special verdict finding that, although the hunting engaged in by defendant was prohibited by a statute requiring defendant to get the written consent of the owner of the land on which defendant hunted, the hunting was not itself dangerous to human life or done in a negligent manner. In spite of the jury's special finding, the trial court adjudged defendant to be guilty of manslaughter, and our Supreme Court reversed the conviction.

the place where he left Futreal, heard defendant hollering that "he thought there was a bear up the tree." When Barrow saw defendant and asked him what happened, defendant said: "I think I shot a man." Barrow continued:

> I asked him what did he mean he thought he shot a man and he said he saw a bush shake and he shot. . . . I asked him what did he mean he thought he shot a man and he said he didn't know. I asked him had he been over there and he said no, so I left there and went over there [where Futreal was] . . . . Before I got to where [Futreal] was, . . . he pointed out where he thought the man was at.

It is true that defendant's subsequent statements to Sam Griffin and Deputy R. E. Provost suggest that defendant had been chasing a deer and shot only after he saw a brown and white spot on what he thought was a deer. It is also true that Futreal was found in a brier thicket that had "bushes and vines overhanging" and "sage grass probably five feet deep." These, however, are factors that the jury was to consider in determining if defendant was culpably negligent; they are not, as a matter of law, insufficient to carry the case to the jury.

III

[2] Having determined that defendant's nonsuit motion was properly denied, we turn to the dispositive issue in this case: whether the trial court's failure, generally, to define "proximate cause," and, specifically, to instruct that foreseeability is a requisite of proximate cause, constitutes prejudicial error.

To hold a defendant criminally responsible for a homicide, the defendant's act must have been a proximate cause of the death. *State v. Satterfield,* 198 N.C. 682, 153 S.E. 155 (1930); *State v. Mizelle,* 13 N.C. App. 206, 185 S.E. 2d 317 (1971). "Proof of culpable negligence does not establish proximate cause," *State v. DeWitt,* 252 N.C. 457, 458, 114 S.E. 2d 100, 101 (1960), because mere proof of a negligent act does not establish its causal relation to the injury. Further, evidence of causal relation is not necessarily proof of proximate cause.

So familiar is the definition of proximate cause that it can be stated, without citation, as a cause: (1) which, in a natural and continuous sequence and unbroken by any new and independent

cause, produces an injury; (2) without which the injury would not have occurred; and (3) from which a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed. Thus:

> [F]oreseeability is a requisite of proximate cause. We have previously pointed this out and ordered a new trial where a proper definition of proximate cause was not given in a civil action. [Citation omitted.] *It is all the more imperative that all of the necessary elements including a correct definition of proximate cause . . . be given in a criminal case.* [Emphasis added.]

*Mizelle,* 13 N.C. App. at 208, 185 S.E. 2d at 318-19.

In this case the defendant, evidently relying on the pattern jury instruction on involuntary manslaughter, N.C.P.I. — Crim. 206.50, which defines proximate cause and specifically refers to foreseeability, requested that the following instruction be given: "To hold a person criminally responsible for manslaughter his act must have been a proximate cause of [the] death. Foreseeability is a requisite of proximate cause." The trial court, however, merely instructed the jury that "the State must prove that this unlawful or criminally negligent [sic] on the part of the defendant in shooting the said Mr. Futreal proximately caused the death of Mr. Futreal." No definition of proximate cause was included in the trial court's charge, and no specific reference to "foreseeability" was made when the trial court mentioned the words "proximately caused."

The trial court did mention the words "reasonable foresight" in defining criminal negligence, and the State, relying on *State v. Gainey,* 292 N.C. 627, 234 S.E. 2d 610 (1977), contends that the instructions, considered contextually, were adequate. We disagree. *Gainey* is distinguishable because the trial court therein adequately defined proximate cause and gave specific instructions on foreseeability.[2]

---

2. Relevant portions of the trial court's instructions in *Gainey* follow:

[T]he State must prove that the defendant's intentional or reckless violation of the law proximately caused Carrie Freeze's death. Proximate cause is a real cause, a cause without which Carrie Freeze's death would not have oc-

A reference to "reasonable foresight" as an element of criminal negligence is not sufficient when no instruction of foreseeability is given with reference to proximate cause. As we stated earlier, evidence of causal relation and proof of culpable negligence are not necessarily proof of proximate cause. *State v. Satterfield.*

In *State v. Mizelle,* the defendant was convicted of involuntary manslaughter based on evidence that his car hit a man who was pushing a pickup truck off the road. Evidence that Mizelle was intoxicated and was driving his car at a speed fifteen (15) miles per hour above the posted limit was admitted. The trial court instructed the jury that it must find that the victim's death "was the natural and probable result of the defendant's act." However, because the trial court did not define proximate cause or state that foreseeability was a requisite of proximate cause, we granted Mizelle a new trial. We do the same here.

IV

Defendant assigned error to other portions of the trial court's charge, but it is not necessary to discuss the issues raised in those assignments of error since they are not likely to occur at re-trial. Certain evidentiary matters will likely be raised at retrial, however, and we now summarily discuss them.

[3] Defendant assigned error to the trial court's refusal to permit defendant's counsel to explain the difference between civil and criminal negligence in his closing argument to the jury. Under N.C. Gen. Stat. § 84-14 (1981), counsel, in his argument to the jury, is entitled to read or state to the jury a relevant statute

---

curred. In order to find that the defendant's violation proximately caused Carrie Freeze's death, you must find first that the violation proximately caused the automobiles to collide at the intersection of this road on this occasion.

Second, that the accident proximately caused Carrie Freeze's death.

Third, that both the accident and the death occurred in a manner which was *reasonably foreseeable* from the defendant's intentional or reckless violation of the law. The defendant's violation need not have been the only cause or the last or nearest cause. It is sufficient if it occurred with some other cause acting at the same time which in combination with it proximately caused the death of Carrie Freeze. [Emphasis added.]

*Gainey* record, pp. 38-39.

or other rule of law so as to present his side of the case. *State v. McMorris*, 290 N.C. 286, 225 S.E. 2d 553 (1976); and *Wiles v. Mullinax*, 270 N.C. 661, 155 S.E. 2d 246 (1967). For example, in *Wiles*, our Supreme Court, citing G.S. § 84-14, ordered a new trial because of the trial court's improper refusal to allow defendant's counsel to read to the jury a statute and recent Supreme Court decision in support of his contention that defendants did obtain for the plaintiff the desired insurance coverage. In the case *sub judice*, defendant should have been allowed to inform the jury that the standard of negligence in civil cases is different from the standard applicable when criminal negligence is charged. Defendant should have been allowed, for example, pursuant to G.S. § 84-14, to read the following passage from *State v. Everhart* which we quoted earlier:

> Culpable negligence in the criminal law requires more than the negligence necessary to sustain a recovery in tort. Rather, for negligence to constitute the basis for the imposition of criminal sanctions, it must be such reckless or careless behavior that the act imports a thoughtless disregard of the consequences of the act or the act shows a heedless indifference to the rights and safety of others. . . .

*Everhart*, at 702, 231 S.E. 2d at 606.

[4] Defendant also assigned error to the trial court's admission of testimony relating to Mrs. Futreal's reaction when told of her husband's death and testimony relating to defendant's failure to contact Mrs. Futreal after her husband's death. We agree with defendant that this testimony was irrelevant, but we cannot say, on the record before us, that it was prejudicial. As the State argues, "a widow's tears are many and not unexpected. In fact, it appears that everyone was affected by the death. Barrow cried when he found the body. The defendant cried." Nevertheless, we repeat the general rule: Testimony which is offered solely for the purpose of creating sympathy for an alleged victim or for the purpose of improperly exciting prejudice against the defendant should not be admitted into evidence. *State v. Braxton*, 294 N.C. 446, 462, 242 S.E. 2d 769, 779 (1978); *State v. Page*, 215 N.C. 333, 1 S.E. 2d 887 (1939). *See also, State v. Johnson*, 298 N.C. 355, 377, 259 S.E. 2d 752, 766 (1979).

[5] Finally, defendant assigned error to the trial court's admission of evidence (i) that defendant did not have a hunting license at the time he shot Futreal, and (ii) that defendant shot a deer at night several weeks after Futreal's death. Whether the defendant had a hunting license on the day in question was irrelevant to the question whether his conduct was criminally negligent. The violation of a statute is pertinent when, and only when, that statute is designed for the protection of human life or limb and there is evidence tending to show that a violation thereof proximately caused the death. *State v. Duncan*, 264 N.C. 123, 141 S.E. 2d 23 (1965). *See also, State v. Horton*, 139 N.C. 588, 51 S.E. 945 (1905), wherein the Supreme Court held that the defendant's manslaughter conviction, arising out of a hunting accident in which the defendant shot the deceased while under the mistaken impression that he was shooting at a turkey, could not be based on the defendant's violation of a statute requiring written permission from a landowner to hunt on his land.

With regard to the testimony that defendant shot a deer at night, we note first that this occurred several weeks *after* Futreal's death. Further, the shooting of a deer at night has minimal probative value on the question of whether defendant would be a truthful witness. Simply put, evidence tending to show that the defendant has a disposition towards culpable negligence is inadmissible. *State v. McAdams*, 51 N.C. App. 140, 275 S.E. 2d 500 (1981).

For the reasons set forth in Part III of this opinion, defendant is entitled to a

New trial.

Judge WEBB concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

I respectfully dissent from the majority opinion and vote to reverse. The evidence discloses the defendant was where he had a right to be, doing what he had a right to do with a weapon he had a right to use. The most that can be said in this case is that

the defendant used bad judgment, which in my opinion, is not culpable negligence.